[No. B110436. Second Dist., Div. Four. Nov. 13, 1997.]

WELLPOINT HEALTH NETWORKS, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BARRY McCOMBS, Real Party in Interest.

## COUNSEL

Lafayette, Kumagai & Clarke, Gary T. Lafayette and Susan T. Kumagai for Petitioners.

No appearance for Respondent.

Jeffrey K. Winikow for Real Party in Interest.

## OPINION

**BARON, J.**—In this case we are asked to resolve two issues: (1) whether a law firm's prelitigation investigation into the circumstances surrounding the claims of an employee who may have suffered discriminatory treatment is protected by the attorney-client privilege and/or the attorney work product doctrine, and (2) if so, whether the employer waives these protections when it raises the investigation as a defense to the employee's ensuing discrimination lawsuit. The trial court ruled that a prelitigation investigation of an employee's discrimination claims did not result in attorney-client communications or attorney work product and so did not reach the second issue. After review of the record, we conclude that no substantial evidence supports the trial court's ruling concerning the inapplicability of the privilege and the work product doctrine. We further hold that resolution of the waiver issue is dependent on the claims asserted in the complaint and the defenses raised thereto. As there was neither a complaint nor an answer on file when the trial court made its ruling, the order compelling discovery was premature. We, therefore, instruct the trial court to vacate its order requiring production of the investigative files prepared on behalf of petitioners. We do this without prejudice to the employee's ability to bring a motion to compel production of the subject documents at a later stage in the proceedings.

### BACKGROUND

*The Complaint and Initial Discovery*

Real party in interest Barry McCombs brought a complaint against defendants Wellpoint Health Networks, Inc., Blue Cross of California, and Craig

Plassmeyer. He alleged that he was employed by Blue Cross since 1987. He reportedly received several merit increases, outstanding performance reviews, and a promotion, but was denied a further promotion in May of 1994 despite the recommendation of his immediate supervisor. According to the complaint, when McCombs tried to find out why, he was given no satisfactory answer and came to the conclusion that it was due to racial discrimination. Defendant Plassmeyer was an independent contractor brought in to supervise McCombs's department around this time. McCombs believed Plassmeyer was responsible for the failure to obtain the promotion.

In a separate incident in 1994, McCombs complained about inadequate disclosures to potential investors when Wellpoint spun off from Blue Cross. At the same time, he continued to bring up his suspicions about racial discrimination and went to the human resources department with his concerns. Ultimately, he filed a formal charge with the Department of Fair Employment and Housing (DFEH). Thereafter, according to the complaint, McCombs began to receive negative performance reviews and was "singled out, harassed and maligned." He "became a marked man" and ". . . Plassmeyer became verbally abusive with McCombs and sought to undermine McCombs' credibility with his peers and with management."

McCombs took a medical leave of absence in January 1995, which he attributed to the "abusive conduct[.]" In May of 1995, when he returned, he was laid off after the work of his department was contracted out to Arthur Andersen & Co.

The complaint purported to state a cause of action for interference with prospective contractual relations based on McCombs's failure to obtain employment with Arthur Andersen, which he believed was the result of information provided by defendants. The second cause of action alleged that defendants retaliated against McCombs for filing the DFEH complaint by "abuse" and by "negative performance criticism" prior to the layoff, in violation of California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). The third cause of action was for failure to promote due to the 1994 complaint to the DFEH. It too was brought under the FEHA. The fourth cause of action claimed "wrongful retaliation in violation of public policy." Here, McCombs alleged that "defendant refused to promote plaintiff to a supervisor's position, and otherwise maintained a retaliatory and oppressive work environment based upon (i) plaintiff's race, (ii) plaintiff's efforts to oppose racial discrimination, and (iii) plaintiff's efforts to ensure compliance with federal and state securities laws."

In their answer to the first amended complaint, defendants alleged in two separate affirmative defenses that "they had no knowledge plaintiff was

subject to discrimination and/or retaliation in the workplace as alleged in his complaint," and that "all reasonable steps to prevent any alleged discrimination and/or retaliation were taken once these answering defendants were made aware of plaintiff's complaints."

McCombs submitted a request for admission asking Wellpoint to admit that "McCombs was faulted for having raised issues of racial discrimination with Blue Cross' human resources department." Wellpoint denied the request for admission, and in response to an interrogatory seeking the facts on which such denial was based, stated: "Plaintiff was never 'faulted' for having raised issues of race discrimination. Each one of his complaints for race discrimination was taken seriously and a complete investigated [*sic*] was conducted."[1]

In December of 1996, defendants' demurrer to the first amended complaint was sustained in part with leave to amend. The court ruled that the claim for "wrongful retaliation in violation of public policy" could not be based on conduct that was discriminatory without being retaliatory and that since McCombs failed to specify when the objectionable treatment occurred, except for the alleged misinformation supplied to preclude McCombs's employment with Arthur Andersen, the claim would have to be amended. Insofar as the claim was based on the alleged whistle-blowing, the court ruled that it was untimely.

McCombs filed a second amended complaint. Defendants again demurred. In conjunction with the discovery order which is the subject of the pending writ petition, the trial court sustained the demurrer to the second amended complaint in its entirety with leave to amend certain causes of action. The court ruled that the allegedly retaliatory acts of denying McCombs a promotion and giving him a negative performance evaluation predated the relevant limitations period, and that he had not met his burden of showing a continuing violation. The court further ruled that much of the alleged conduct— "denial of the right to an impartial investigation, firing and 'silencing' of a co-employee who supported [McCombs] and failure to inform [McCombs] during his medical leave that his position was eliminated"—did not constitute adverse employment action against McCombs. The court continued to believe that certain allegations had not been sufficiently pleaded, including the source of the public policy needed to support the claim of termination in violation of public policy and the date of the negative performance evaluation. Thus, when the trial court ruled on the motion to compel, there was no viable claim on file.

---

[1] At some later time, Wellpoint amended its response to delete the second sentence.

*The Document Request and Subpoena*

The issues raised by this petition arise from an investigation undertaken by the employer[2] prior to McCombs's layoff and lawsuit. In 1994, in response to McCombs's initial concerns, the law firm of Lafayette, Kumagai & Clarke performed an investigation on the employer's behalf. Gary Lafayette sent a letter to McCombs discussing the findings in three areas: failure to promote, unfair performance appraisal, and unfair discriminatory actions. The letter, dated November 1, 1994, summarized interviews with Mc-Combs's supervisors concerning the reason the promotion fell through and the facts behind the negative performance review. It also discussed whether any negative comments or punitive actions had been taken against Mc-Combs. The letter concluded that McCombs's suspicions of racial discrimination were unsupported by the investigation, and that "each charge [Mc-Combs] ha[d] filed in the past ha[d] been fully investigated and taken seriously."

With this letter in mind, McCombs caused a deposition subpoena to be issued to Gary Lafayette, who at that point was representing defendants in the lawsuit. The terms of the subpoena are set forth in the footnote.[3] McCombs also sought his own "complete personnel file" which was defined

---

[2]As we understand it, McCombs's employer was Blue Cross until the spin-off when it became Wellpoint.

[3]The subpoena sought documents in the following categories: "1. ALL WRITINGS which YOU obtained in your connection with your investigation into Barry McCombs' allegations of racial discrimination, and which were obtained by YOU between January 1, 1993 and November 1, 1994. [¶] 2. ALL WRITINGS, including notes, which evidence, refer to or reflect any communications between YOU and any other person which relate to Barry McCombs, and which occurred between January 1, 1993 and November 1, 1994. [¶] 3. ALL WRITINGS, including notes, which evidence, refer to or reflect any communications between YOU and any other person which relate to allegations of racial discrimination at THE COMPANY, and which occurred between January 1, 1993 and November 1, 1994. [¶] 5. [*sic*] ALL WRITINGS, including notes, which evidence, refer to or reflect communications between YOU and THE COMPANY which evidence, refer to or reflect Barry McCombs between January 1, 1993 and November 1, 1994. [¶] 6. ALL WRITINGS which evidence, refer to or reflect the legal fees billed to THE COMPANY in connection with Barry McCombs' civil action (LASC No. BC 138067). [¶] 7. YOUR entire file, and each of the contents therein, concerning the investigation of Barry McCombs' allegations of racial discrimination and retaliation. [¶] 8. ALL WRITINGS upon which you relied in determining that Mr. McCombs had 'not been discriminated against because of [his] race in any of the matters referenced in [his] letter of September 15, 1994.', as YOU wrote to Mr. McCombs on or about November 1, 1996 [*sic*]. [¶] 9. All policies and procedures of THE COMPANY which YOU reviewed between January 1, 1993 and November 1, 1994 in connection with your investigation into Mr. McCombs' allegations of discrimination. [¶] 10. All WRITINGS which YOU reviewed when YOU determined that each charge that Mr. McCombs had filed in the past had been fully investigated and taken seriously, as YOU wrote to Mr. McCombs on or about November 1, 1994. [¶] 11. All WRITINGS, including but not limited to notes, which evidence, refer to or reflect any communications between YOU and Charles McGrory between January 1, 1993 and November 1, 1993 [*sic*] which refer or relate

to include documents pertaining to the " 'investigation of EEOC or DFEH matters,' " in a request to produce documents directed to Wellpoint and Blue Cross. Lafayette refused to produce such documents, raising the attorney-client privilege and work product doctrine. Similarly, Wellpoint and Blue Cross refused to produce documents related to the law firm's investigation of McCombs's initial complaints on attorney-client and work product grounds.

The discovery dispute was heard by a referee appointed by the trial court, retired Judge Paul Breckenridge, who concluded the employer should be required to produce all documents responsive to the "complete personnel file" request, including documents related to the law firm's investigation. The report and recommendation specified that the responding parties "may redact from writings any attorney impressions, conclusions or portions representing attorney's thought processes," but further directed that "[c]opies of redacted and unredacted writings must be submitted to the referee for in camera review[.]" The report and recommendation required responding parties to provide a privilege log where a privilege was asserted.

Objections were raised to the referee's recommendations, and after a hearing, the trial court adopted the recommendations insofar as they are relevant here. In so doing, the court explained: ". . . Mr. Lafayette (defendant's current counsel) acted as the corporate investigator into plaintiff's complaints of discrimination, and plaintiff is entitled to discover the results of that investigation notwithstanding the fact that Mr. Lafayett[e] happens to be an attorney ([Labor Code, section] 1198.5; *Harding* [v. *Dana Transport,*

---

to Barry McCombs. [¶] 12. All WRITINGS, including but not limited to notes, which evidence, refer to or reflect any communications between YOU and Craig Plassmeyer between January 1, 1993 and November 1, 1993 [*sic*] which refer or relate to Barry McCombs. [¶] 13. All WRITINGS, including but not limited to notes, which evidence, refer to or reflect any communications between YOU and Frank Sandez between January 1, 1993 and November 1, 1993 [*sic*] which refer or relate to Barry McCombs. [¶] 14. All WRITINGS, including but not limited to notes, which evidence, refer to or reflect any communications between YOU and any person employed in THE COMPANY's Human Resource Department between January 1, 1993 and November 1, 1993 [*sic*] which refers or relates to Barry McCombs. [¶] 15. All WRITINGS, including but not limited to notes, which evidence, refer to or reflect any communications between YOU and any person employed by THE COMPANY (including but not limited to the Legal Department) between January 1, 1993 and November 1, 1993 [*sic*] which refers or relates to Barry McCombs. [¶] 16. All WRITINGS, including but not limited to documents, letters, memos, handwritten notes and/or tapes that refer to, relate to, or evidence any investigation, questioning of witnesses or conversations pertaining to allegations of racial discrimination or retaliation by THE COMPANY or Craig Plassmeyer. [¶] 17. Any and all time sheets and billing records that refer to, relate to or evidence, actual time spent by YOU in investigating the issues of racial discrimination and retaliation raised by Barry McCombs during his employment with THE COMPANY. [¶] 18. Any and all correspondence between THE COMPANY and YOU pertaining to the investigation to be conducted, or previously conducted, by YOU."

*Inc.* (D.N.J. 1996) 914 F.Supp. 1084]). Although Judge Breckenridge did not explicitly so conclude, because Mr. Lafayette was acting in a non-attorney capacity, the attorney-client privilege does not apply here (*Montebello Rose [Co.* v. *Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1 [173 Cal.Rptr. 856]]; *Watt Industries[, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 802 [171 Cal.Rptr. 503]]). Nonetheless, so as to avoid compromising the work-product doctrine, Judge Breckenridge recommended that documents pertaining to the investigation be produced but that defendants provide a privilege log as to any documents containing attorneys' mental impressions and that Judge Breckenridge inspect in camera any withheld documents. Such an approach fairly resolves defendant's concerns. Further, Mr. Lafayette should be compelled, consistent with the above, to produce all such documents in his possession or control, even if the location of some of such documents happens to be at his law firm."

Petitioners Wellpoint and Lafayette filed a petition for writ of mandate, requesting an immediate stay. We granted the stay and issued the alternative writ in order to prevent a potential violation of privilege. (See *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309]; *BP Alaska Exploration, Inc.* v. *Superior Court* (1988) 199 Cal.App.3d 1240, 1249 [245 Cal.Rptr. 682] (hereafter *BP Alaska*).)

## DISCUSSION

### I

■ The attorney-client privilege is contained in Evidence Code section 950 et seq., and in general allows the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." (Evid. Code, § 954.) The attorney-client privilege covers all forms of communication, including the transmission of specific documents (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 600 [208 Cal.Rptr. 886, 691 P.2d 642]), so a party should not ordinarily formulate a discovery request seeking "all documents transmitted to responding party's attorney." At the same time, documents prepared independently by a party, including witness statements, do not become privileged communications or work product merely because they are turned over to counsel. (See *Nacht & Lewis Architects, Inc.* v. *Superior Court* (1996) 47 Cal.App.4th 214 [54 Cal.Rptr.2d 575].)[4]

■ "[U]nder the Evidence Code, the attorney-client privilege applies to confidential communications within the scope of the attorney-client relationship even if the communication does not relate to pending litigation; the

---

[4]We presume that the documents at issue here are not memoranda and statements separately prepared by the defendants or their employees.

privilege applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened. [Citations.]" (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 371 [20 Cal.Rptr.2d 330, 853 P.2d 496].) For the communication to be privileged where a corporate entity is the client, "the dominant purpose must be for transmittal to an attorney 'in the course of professional employment.' [Citations.]" (*Holm* v. *Superior Court* (1954) 42 Cal.2d 500, 507 [268 P.2d 722], disapproved on another point in *Suezaki* v. *Superior Court* (1962) 58 Cal.2d 166 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073].)

The attorney work product doctrine is codified in section 2018 of the Code of Civil Procedure which provides in relevant part: "(a) It is the policy of the state to: (1) preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases; and (2) to prevent attorneys from taking undue advantage of their adversary's industry and efforts. [¶] (b) Subject to subdivision (c), the work product of an attorney is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice. [¶] (c) *Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.*" (Italics added.)

█ "The work product rule in California creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions or legal theories." (*BP Alaska, supra,* 199 Cal.App.3d at p. 1250.)

An important distinction between the attorney-client privilege and the attorney work product doctrine was discussed in *BP Alaska,* wherein the court held: "The Evidence Code section 956 crime-fraud exception does not apply to documents protected by the work product rule." (*BP Alaska, supra,* 199 Cal.App.3d at p. 1249, italics deleted; accord, *State Farm Fire & Casualty Co.* v. *Superior Court* (1997) 54 Cal.App.4th 625, 650 [62 Cal.Rptr.2d 834].) "The sole exception to the literal wording of the statute which the cases have recognized is under the waiver doctrine which has been held applicable to the work product rule as well as the attorney-client privilege. [Citation.]" (*BP Alaska, supra,* at p. 1254, italics deleted.)[5]

Another distinction between attorney-client communications and work product derives from Evidence Code section 915 which forbids "disclosure

---

[5]Although *BP Alaska* was decided under an earlier version of the statute protecting work product, it remains valid authority. In enacting Code of Civil Procedure section 2018, the

of information claimed to be privileged under this division in order to rule on the claim of privilege . . . ." In commenting on this provision, our Supreme Court has noted that "[t]here is no statutory or other provision that allows for . . . an inspection of documents allegedly protected by the attorney-client privilege." (*Southern Cal. Gas Co.* v. *Public Utilities Com.* (1990) 50 Cal.3d 31, 45, fn. 19 [265 Cal.Rptr. 801, 784 P.2d 1373].) This means that unless the party holding the privilege allows it, there can be no in camera inspection of documents to determine whether the privilege exists. (*Lipton* v. *Superior Court* (1996) 48 Cal.App.4th 1599, 1619 [56 Cal.Rptr.2d 341].) However, in camera inspection is the proper procedure to evaluate the applicability of the work product doctrine to specific documents, and categorize whether each document should be given qualified or absolute protection. (*BP Alaska, supra,* 199 Cal.App.3d at p. 1261; *Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 68-70 [166 Cal.Rptr. 274].)

With these principles in mind, we turn to the issues raised by the petition.

## II

■ McCombs argues here and argued below that an attorney retained to investigate employee claims of discrimination is not acting as an attorney but as a fact finder, and that the attorney-client privilege and work product doctrine therefore do not have any applicability. The trial court agreed, based on *Montebello Rose Co.* v. *Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1 [173 Cal.Rptr. 856] and *Watt Industries, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 802 [171 Cal.Rptr. 503], that Lafayette was acting in a nonattorney capacity when he undertook the investigation of McCombs's in-house complaints.

In *Montebello Rose,* an attorney had been hired by management to negotiate with the union. After conducting an in camera inspection of documents representing communications between the attorney and his employer, the labor board had concluded that certain communications were not privileged in that they were not related to a request for the giving of legal advice. The board separated documents representing "communications in a legal capacity from those in his nonlegal capacity as a labor negotiator . . . ." (119 Cal.App.3d at p. 31.) The appellate court upheld the distinction drawn by the board and its decision to allow documents in the latter category into evidence, reasoning: "Since [the employer's] labor negotiations could have

Legislature expressly stated: "This section is intended to be a restatement of existing law relating to protection of work product. It is not intended to expand or reduce the extent to which work product is discoverable under existing law in any action." (Code Civ. Proc., § 2018, subd. (d).)

been conducted by a nonattorney, it is self-evident that communications with [the attorney] relating to the conduct of those negotiations were not privileged unless the dominant purpose of the particular communication was to secure or render legal service or advice." (119 Cal.App.3d at p. 32.)

In *Watt Industries*, a developer engaged in the process of converting a rental property into condominiums wished to ascertain whether certain prospective buyers intended to occupy the unit as their primary residence after sale. The developer spoke with the attorney for the buyers who allegedly made numerous representations about their intention to live in the unit. After the deal closed, the buyers immediately put the unit on the market, and the developer sued for rescission. The notes taken by the attorney during the conversation with the developer were sought during discovery. The attorney claimed they represented his work product. The court disagreed, holding that where "the attorney acts merely as a business agent for the client in conveying the client's position to a contracting party, we see no justification for protecting the attorney's notes concerning the conversation. To apply the privilege in such a situation would have the effect of placing a premium upon use of attorneys as business agents, nonattorneys or clients acting for themselves having no such right to protect their notes. As we view the work-product 'privilege,' it applies to documents related to legal work performed for a client, not to notes memorializing acts performed as a mere agent." (115 Cal.App.3d at p. 805, fn. omitted.) The court added the following caveat: "We acknowledge that under different facts, the distinction between acts performed as an agent and those involving legal work might be difficult to draw. Presumably, in doubtful cases or those in which the legal work and work performed as an agent are inextricably intertwined, the privilege will be sustained. However, this is a clearcut case of an attorney acting as a business agent performing nothing which could be considered legal work in the conversation memorialized." (*Ibid.*, fn. 1.)

Reliance on these cases to support a blanket rule excluding attorney investigations of employer discrimination from attorney-client and work product protection is misplaced. Both cases involved analyses of individual documents containing attorney-client communications or purported work product to determine whether the dominant purpose behind each was or was not the furtherance of the attorney-client relationship. The courts in both cases recognized that even though an attorney is hired to conduct business affairs, he or she may be called on to give legal advice during the course of the representation, and documents related to those communications should be protected notwithstanding the original purpose of employing the attorney. The trial court should not have given McCombs carte blanche access to Lafayette's investigative file, but should have based its ruling on the subject matter of each document.

McCombs contends that the trial court made a factual finding that Lafayette's entire investigation was not conducted for a predominately legal purpose, and that a trial court's determination of factual issues in connection with a motion to compel discovery cannot be overturned if there is any substantial evidence to support it. (See *D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700]; *BP Alaska, supra,* 199 Cal.App.3d at pp. 1261-1262.) This is a surprising argument given that McCombs presented no facts on this point in connection with his motion to compel. In his original moving papers, McCombs argued, first, that he was entitled to the investigative file as a matter of law under Labor Code section 1198.5 because it was part of his "personnel file," and, second, that petitioners had waived the privilege by raising the investigation as a defense in their answer to the first amended complaint. The only evidence submitted by McCombs at that time was in the form of declarations signed by his counsel wherein counsel attested to the authenticity of the document requests and responses and set forth the good faith attempt to resolve the matter informally.

In supplemental papers in support of the motion, McCombs argued for the first time that Lafayette was not acting as an attorney, but as a fact finder and investigator. Here again the only declaration submitted was from the attorney representing McCombs, which discussed the discovery dispute but contained no underlying facts concerning the investigation. On this showing, we cannot agree with McCombs that substantial evidence supported the trial court's finding.

McCombs suggests that it was petitioners' burden to establish that Lafayette's investigation involved functions primarily legal in nature. While it is true that the burden of showing preliminary facts necessary to support the privilege lies with the party claiming it (*State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 54 Cal.App.4th at p. 639), there was never a dispute concerning the underlying facts. McCombs conceded in his memorandum in support of the motion to compel that Lafayette was an attorney hired by his employer to conduct an investigation of the charges of discrimination. This concession established the facts necessary to support a prima facie claim of privilege, i.e., communication in the course of the lawyer-client relationship (see *State Farm Fire & Casualty Co.* v. *Superior Court, supra,* at p. 639), and passed the burden to McCombs to make a prima facie showing that an exception applied. (*Ibid.*; see *BP Alaska, supra,* 199 Cal.App.3d at p. 1252 [holding that party claiming privilege could not be "faulted for failing to make an adequate evidentiary showing when there was no apparent need to do so" because opposing party did not challenge the conclusion that the documents at issue contained attorney impressions, opinions, and legal

theories].) "The party opposing the privilege must bear the burden of showing that the claimed privilege does not apply or that an exception exists or that there has been an expressed or implied waiver. [Citation.]" (*Lipton* v. *Superior Court, supra,* 48 Cal.App.4th at p. 1619.) McCombs could not meet this burden by simply asserting in a supplemental memorandum of points and authorities that Lafayette was engaged in a fact-finding mission. At a minimum, he needed to present evidence concerning his employer's normal method of dealing with internal employment discrimination complaints and whether they were routinely assigned to outside counsel to investigate and deal with. It might then have been urged that Lafayette was engaged in routine fact-finding on behalf of the company's personnel department rather than legal work. (But see *Aetna Casualty & Surety Co.* v. *Superior Court* (1984) 153 Cal.App.3d 467, 475-476 [200 Cal.Rptr. 471] [holding that an insurer's hiring of an attorney to investigate the insured's claim and make a coverage determination under the policy represents "a classic example of a client seeking legal advice from an attorney," and that inapplicability of the privilege must be decided on a document by document basis].) In the absence of any evidence on this point, the trial court could not make a factual finding.

## III

■ The trial court ruled that production of the documents was required by Labor Code section 1198.5. That statute provides: "Every employer shall at reasonable times, and at reasonable intervals as determined by the Labor Commissioner, upon the request of an employee, permit that employee to inspect such personnel files which are used or have been used to determine that employee's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." (Lab. Code, § 1198.5, subd. (a).) In a memorandum interpreting this provision, the labor commissioner has stated: ". . . Categories of records which are defined as personnel records are those that are used or have been used to determine that employee's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action. [¶] The following, but not limited to, are examples of items (if maintained) which are subject to inspection: [¶] . . . [¶] . . . q) Investigation of FEPC or EEOC matters."

We agree that the provision intends a broad definition of "personnel file" to preclude employers from assigning documents to files having some other name, and then refusing access to the documents on the ground that they are not contained in the "personnel file." To accomplish this, the statute defines an employee personnel file as anything "used to determine that employee's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action" wherever located within the employee's various departments. (Lab. Code, § 1198.5, subd. (a).) However, while

the statute mandates unconstrained employee access to personnel files, it does not express a legislative intention to overthrow the traditional protections afforded attorney-client communications and work product documents. The area of privilege "is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme." (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) § 911, p. 153.) Courts are not permitted to add to the statutory privileges or imply unwritten exceptions. (*Roberts* v. *City of Palmdale*, *supra*, 5 Cal.4th at p. 373.) If the Legislature intended to require employers to turn over privileged documents, we believe it would have said so plainly. We refuse to read into the Labor Code an implied exception to the attorney-client privilege or work product doctrine.

## IV

■ McCombs argues that petitioners waived any existing attorney-client or work product protections by raising the investigation as a defense to his claims, as in *Harding* v. *Dana Transport, Inc.* (D.N.J. 1996) 914 F.Supp. 1084. To understand *Harding* and appreciate its significance to the present litigation, we first briefly summarize the legal context in which it arose.

Federal statute provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" (42 U.S.C. § 2000e-2(1).) Federal courts have concluded that a violation of this provision occurs both when an employee suffers an adverse personnel decision due to discrimination, and when the employee is subjected to harassment that, while not affecting economic benefits, creates a hostile or offensive working environment. (*Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 61 [106 S.Ct. 2399, 2402-2403, 91 L.Ed.2d 49]; *Firefighters Institute, etc.* v. *City of St. Louis* (8th Cir. 1977) 549 F.2d 506, 514-515, cert. den. *sub nom. Banta* v. *United States* (1977) 434 U.S. 819 [98 S.Ct. 60, 54 L.Ed.2d 76]; *Gray* v. *Greyhound Lines, East* (D.C. Cir. 1976) 545 F.2d 169, 176 [178 App.D.C. 91], disapproved in part on other grounds in *Fair Employ. Council* v. *BMC Marketing Corp.* (D.C. Cir. 1994) 28 F.3d 1268 [307 App.D.C. 401]; *Rogers* v. *Equal Employment Opportunity Com'n* (5th Cir. 1971) 454 F.2d 234, cert. den. (1972) 406 U.S. 957 [92 S.Ct. 2058, 32 L.Ed.2d 343], disapproved in part on other grounds in *EEOC* v. *Shell Oil Co.* (1984) 466 U.S. 54 [104 S.Ct. 1621, 80 L.Ed.2d 41].)

To sustain a hostile work environment claim under the federal statute, the plaintiff must, among other things, establish "the existence of respondeat

superior liability. [Citations.]" (*Andrews* v. *City of Philadelphia* (3d Cir. 1990) 895 F.2d 1469, 1482.) This means that the plaintiff must prove "that management-level employees had actual or constructive knowledge about the existence of a . . . hostile environment and failed to take prompt and adequate remedial action . . . ." (*Id.* at p. 1486; accord, *Steele* v. *Offshore Shipbuilding, Inc.* (11th Cir. 1989) 867 F.2d 1311, 1316 ["[L]iability exists where the . . . defendant knew or should have known of the harassment and failed to take prompt remedial action[.]"]; *Katz* v. *Dole* (4th Cir. 1983) 709 F.2d 251, 256 ["[T]he plaintiff must show that the employer knew or should have known of the harassment, and took no effectual action to correct the situation."].)

Thus, a vital component of a hostile work environment harassment claim under federal law is proof that the employer had knowledge of the existence of the hostile environment. In most cases, this is established by a showing that complaints about the harassment were lodged with the employer. The employer may defend "by pointing to prompt remedial action reasonably calculated to end the harassment." (*Katz* v. *Dole, supra,* 709 F.2d at p. 256.) Proof of "prompt remedial action reasonably calculated to end the harassment" can consist of a range of actions such as warning the offending employee (*Barrett* v. *Omaha Nat. Bank* (8th Cir. 1984) 726 F.2d 424, 427), issuing a written reprimand (*Swentek* v. *USAIR, Inc.* (4th Cir. 1987) 830 F.2d 552, 558), ordering employees to undergo counseling (*Intlekofer* v. *Turnage* (9th Cir. 1992) 973 F.2d 773, 779-780), or terminating the harasser (*Bouton* v. *BMW of North America, Inc.* (3d Cir. 1994) 29 F.3d 103, 106).

Whatever course of action the employer chooses to take, an effective remedy is unlikely to take shape in the absence of a thorough investigation of the alleged acts of harassment. This explains why an investigation conducted by an attorney or law firm of an employee's claim of harassment differs from the typical prelitigation investigation, and why in certain circumstances it may be treated differently. The adequacy or thoroughness of a defendant's investigation of plaintiff's claim is simply irrelevant in the typical civil action. In an employment discrimination lawsuit based on hostile work environment, on the other hand, the adequacy of the employer's investigation of the employee's initial complaints could be a critical issue if the employer chooses to defend by establishing that it took reasonable corrective or remedial action. (See, e.g., *Bouton* v. *BMW of North America, Inc., supra,* 29 F.3d at p. 107; *Barrett* v. *Omaha Nat. Bank, supra,* 726 F.2d at p. 427; *Giordano* v. *William Patterson College* (D.N.J. 1992) 804 F.Supp. 637, 643; *Swentek* v. *USAIR, Inc., supra,* 830 F.2d at p. 558 [holding that an investigation may be deemed thorough and adequate, even though it leads the employer to the conclusion that not all of the employee's allegations are true].)

This was the basis of the ruling of the federal district court in *Harding* v. *Dana Transport, Inc.*, *supra*, 914 F.Supp. 1084, the case on which McCombs principally relies to support the case for waiver. In *Harding*, plaintiffs had filed a complaint with the New Jersey Division on Civil Rights, alleging that they were subjected to sexual harassment by one of their supervisors, and the employer " 'defended its position [during the NJDCR inquiry] in part on the grounds that it had conducted an appropriate investigation of [the plaintiffs'] allegations.' " (914 F.Supp. at pp. 1087-1088.) Thereafter, proceedings moved to the district court, and plaintiffs sought to inquire into the investigation conducted by the employer's attorney. The employer admitted to the court that "defense strategy included reliance upon the reasonableness of [its] actions in response to the plaintiffs' charges," and that it intended to defend liability based in part upon its lawyer's investigation. (*Id.* at p. 1088.)

After analyzing the relevancy of the investigation to the employment discrimination charges in the complaint, the court reviewed a number of cases in which the attorney-client privilege was found to have been waived when the client asserted a defense based on advice of counsel. (See, e.g., *Glenmede Trust Co.* v. *Thompson* (3d Cir. 1995) 56 F.3d 476; *Handgards, Inc.* v. *Johnson & Johnson* (N.D.Cal. 1976) 413 F.Supp. 926; *Garfinkle* v. *Arcata National Corporation* (S.D.N.Y.1974) 64 F.R.D. 688.) Persuaded by these authorities, the court sided with plaintiffs, and held that the attorney-client privilege had been waived with respect to the content of the attorney's investigation of the plaintiffs' allegations. The court gave the following rationale for its decision: "Discovery of the content of the investigation is relevant to much more than the state of mind of [the employer]. Rather, the investigation, itself, provides a defense to liability. As previously reviewed, Title VII permits employer liability which employers may refute by proving that they reasonably and sufficiently investigated the allegations of discrimination. *Andrews*, 895 F.2d at 1482. [The employer] has attempted to utilize the results of [the attorney's] investigation both as a defense to liability under Title VII and as an aspect of its preparation for the sexual discrimination trial itself. By asking [the attorney] to serve multiple duties, the defendants have fused the roles of internal investigator and legal advisor. Consequently, [the employer] cannot now argue that its own process is shielded from discovery. Consistent with the doctrine of fairness, the plaintiffs must be permitted to probe the substance of [the employer's] alleged investigation to determine its sufficiency. Without having evidence of the actual content of the investigation, neither the plaintiffs nor the fact-finder at trial can discern its adequacy." (*Harding* v. *Dana Transport, Inc.*, *supra*, 914 F.Supp. at p. 1096.)

The court in *Harding* did not hold that investigation of hostile work environment charges by an attorney is unprivileged because it is not predominately legal work. To the contrary, the court specifically ruled that in the

absence of countervailing evidence, it would presume that the privilege applied: " '[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice. . . . The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant.' [¶] . . . Mr. Bowe indicates that he conducted the investigation at Dana Transport, Inc. in furtherance of his representation of Dana. [Citation.] This court has been provided with no information which contradicts Mr. Bowe's assertion. Mr. Bowe's investigation clearly falls within the purview of attorney activity. Consequently, the court finds that Mr. Bowe was acting as an attorney for the purposes of the attorney-client privilege." (914 F.Supp. at p. 1091.)

The proposition for which *Harding* stands is that the employer's injection into the lawsuit of an issue concerning the adequacy of the investigation where the investigation was undertaken by an attorney or law firm must result in waiver of the attorney-client privilege and work product doctrine. With this proposition, we agree. ■ As our Supreme Court has held, waiver is established by a showing that "the client has put the otherwise privileged communication directly at issue and that disclosure is essential for a fair adjudication of the action. [Citation.]" (*Southern Cal. Gas Co.* v. *Public Utilities Com., supra,* 50 Cal.3d at p. 40, citing *Mitchell* v. *Superior Court, supra,* 37 Cal.3d at p. 609.) ■ California law is to the same effect as federal law in this area, although it is not judge-made. The FEHA itself lays out knowledge and failure to act as necessary preconditions to employer liability for harassment: ". . . Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Gov. Code, § 12940, subd. (h)(1).) In addition, the FEHA specifies that "[a]n entity shall take all reasonable steps to prevent harassment from occurring." (*Ibid.*)

If a defendant employer hopes to prevail by showing that it investigated an employee's complaint and took action appropriate to the findings of the investigation, then it will have put the adequacy of the investigation directly at issue, and cannot stand on the attorney-client privilege or work product doctrine to preclude a thorough examination of its adequacy. The defendant cannot have it both ways. If it chooses this course, it does so with the understanding that the attorney-client privilege and the work product doctrine are thereby waived.

This leads to the question of whether a waiver has occurred herein. The trial court did not reach this question because of its ruling that Gary

Lafayette was not acting in a predominantly legal role. We believe that the question could not be properly answered at the point when the trial court issued its order compelling production of the file. Demurrer to the second amended complaint had been sustained. There was no complaint on file and no indication of defense strategy. In his third amended complaint, McCombs might have chosen to focus on claims of discrimination and retaliation through adverse employment actions rather than on hostile work environment. Employer knowledge and failure to take appropriate corrective action is not an element of an ordinary discrimination claim. (See *Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. at pp. 70-71 [106 S.Ct. at p. 2407] ["[T]he courts have consistently held employers liable for the discriminatory discharges of employees by supervisory personnel, whether or not the employer knew, should have known, or approved of the supervisor's actions. *E.g., Anderson* v. *Methodist Evangelical Hospital, Inc.,* 464 F.2d 723, 725 (CA6 1972)."].) Even if a claim for hostile work environment were to be asserted, defendants might not raise the defense of investigation and remedial action as they did in the earlier answer to the first amended complaint. They might instead choose to defend by denying the alleged incidents occurred or by denying they were racially motivated.

Put simply, prior to any finding on the question of waiver, McCombs must file an acceptable complaint. Only then, and only if defendants' answer or discovery responses indicate the possibility of a defense based on thorough investigation and appropriate corrective response, can a finding of waiver be made. The order requiring petitioners to turn over the investigative file must be reversed without prejudice to McCombs's ability to reassert a right to obtain discovery of the file at a later time if defendants interject a defense based on the investigation.

## V

Code of Civil Procedure section 2031, subdivision (f)(3) states that ". . . [i]f the responding party objects to the demand for inspection of an item or category of item, the response shall (A) identify with particularity any document . . . falling within any category of item in the demand to which an objection is being made, and (B) set forth clearly the extent of, and the specific ground for, the objection." The trial court directed responding parties to prepare a privilege log "as to any documents containing attorneys' mental impressions" under the belief that only documents fitting that description were to be protected from disclosure. Since our holding allows all arguably attorney-client and work product protected documents to be withheld at this point, the trial court should amend its order to require responding parties to prepare a privilege log for all documents pertaining to the investigation which they believe are privileged or subject to the attorney work

product doctrine. The information in the privilege log must be sufficiently specific to allow a determination of whether each withheld document is or is not fact privileged. (See *Lipton* v. *Superior Court, supra,* 48 Cal.App.4th at p. 1619.)

## DISPOSITION

The alternative writ is discharged and the stay is dissolved. Let a peremptory writ of mandate issue directing the respondent trial court to vacate its order of March 5, 1997, to the extent that it requires petitioners to produce all documents pertaining to the Lafayette law firm's prelitigation investigation of McCombs's complaint of discrimination, and to enter an order requiring petitioners to prepare a privilege log pursuant to section 2031, subdivision (f)(3) of the Code of Civil Procedure. Should defendants waive the attorney-client privilege or the protections of the work product doctrine in their answer or otherwise, the motion to compel may be renewed and resolved in accordance with the views expressed in this opinion. Costs to petitioners.

Vogel (C. S.), P. J., and Epstein, J., concurred.