Clark **WALKER**, Plaintiff,

v.

**COUNTY OF CONTRA COSTA**, et al., Defendants.

No. C03–03723 TEH(JL).

United States District Court, N.D. California.

April 14, 2005.

---

44. AS § 29.20.160.

45. *Cf.* Fed.R. Civ.P. 17(a).

46. Exh. A to Complaint [doc. 1].

Pamela Y. Price, Price and Associates, Oakland, CA, for Plaintiff.

Bernard Louis Knapp, Silvano B. Marchesi, County Counsel, Martinez, CA, for Defendants.

## ORDER TO PRODUCE DOCUMENTS
### (Granting in Part Docket # 57)

JAMES LARSON, United States Magistrate Judge.

### Introduction

The parties filed a Joint Statement of Discovery Dispute recounting Plaintiff's motion to compel Defendants to produce documents. The Court heard oral argument. Pamela Price appeared for Plaintiff, Bernard Knapp appeared for Defendants. The Court ruled from the bench that Defendants within ten days produce all requested documents, with the exception of the report of attorney Linda A. Tripoli, (the "Tripoli Report") prepared at the request of Deputy County Counsel Andrea W. Cassidy, and the report of Leslie T. Knight, Director of Human Resources for Contra Costa County, (the "Knight Report") prepared at the request of Silvano Marchesi,

Contra Costa County Counsel. The Court ordered Defendants to produce these two documents for in camera review. The Court conducted its in camera review, considered the legal authorities cited by the parties and conducted considerable legal research sua sponte and hereby issues its order.

### Factual Background

Clark Walker is a Battalion Chief with the Contra Costa County Fire Protection District ("CCCFPD"). In 2000 and again in 2003 Mr. Walker, an African American, was passed over for promotion to the position of Assistant Fire Chief. In 2000 a more senior applicant filled the position and in 2003 two outside candidates, both Caucasian males, were also hired. Defendant Keith Richter, the CCCFPD Fire Chief since 1998, was partially responsible for hiring Assistant Fire Chiefs in both 2000 and 2003. Plaintiff filed a claim with the California Department of Fair Employment and Housing ("DFEH") in 2003 after he lost the promotion. After the DFEH charge was filed, Contra Costa Deputy County Counsel Andrea Cassidy engaged Linda Tripoli, an attorney, to investigate the charge and report to County Counsel on the merits of Walker's claim. Also in 2003 [1] various people spoke to the Contra Costa County Board of Supervisors at a public meeting about the failure to promote Plaintiff. As a result of these public comments the Board requested a report be prepared by the County's Human Resources Department. This report was prepared and presented to the Board in a closed session. Plaintiff now requests copies of both Ms. Tripoli's report (the "Tripoli Report") and the Human Resources Department report (the "Knight Report"). Plaintiff also requests that Defendants be directed to answer four interrogatories propounded to Defendants on October 13 and 28, 2004.

### Procedural Background

On December 18, 1975 the County entered into a Consent Decree requiring it to take affirmative action to promote women and minorities in job classifications where they

---

1. It is unclear from the statements of fact whether this public hearing occurred before or after Plaintiff filed his claim with DFEH.

are not proportionally represented. *Croskrey v. Contra Costa County*, U.S. District Court Case No. C 73–0906. The Consent Decree is still in effect in Contra Costa County and is assigned to Judge Spero. Ms. Price, Plaintiff's attorney in the case at bar, is the attorney for the plaintiffs in the *Croskrey* case.

Plaintiff Clark Walker filed charges with the Equal Employment Opportunity Commission ("EEOC") before bringing this suit and received his right to sue letter on June 13, 2003.

Walker filed this race discrimination suit against Contra Costa County and Keith Richter in his individual capacity on August 8, 2003. Plaintiff alleges discrimination in violation of 42 U.S.C. § 1981 against both Defendant Richter and the County. Against Defendant Richter alone Plaintiff alleges race discrimination in violation of § 1983. Against the County alone Plaintiff alleges two Title VII violations, race discrimination and retaliation, as well as a violation of § 1983 based on the County's custom, policy and practice of discrimination.

Defendants answered Walker's complaint on December 12, 2003 denying all allegations and asserting twelve affirmative defenses including that "plaintiff's claims are barred because CCCFPD took and had taken reasonable steps to prevent and promptly correct any discrimination and/or harassment in the workplace, and plaintiff unreasonably failed to take advantage of the preventative and corrective opportunities provided by the CCCFPD or avoid harm otherwise." Defendant demanded a jury trial.

Trial in this case is set for July 12, 2005. Discovery cut-off was January 17, 2005 and the deadline for motions to compel was January 27, 2005. A further settlement conference is scheduled with Judge Spero for May 11, 2005.

## Analysis

### Self–Evaluative Privilege

▮ Because this is a federal question case, the court applies federal common law principles governing the self-critical analysis or self-evaluative privilege. *Dowling v.*

*American Hawaii Cruises, Inc.*, 971 F.2d 423 at 425–26 (9th Cir.1992) (citing Note, Self Critical Analysis Privilege, 96 Harv. L.Rev. 1083). The Ninth Circuit also notes that the privilege will not apply unless the document at issue was prepared with the expectation that it would be kept confidential and it was in fact kept confidential. *Id.*

The self-evaluative privilege evolved to protect internal evaluations disclosure of which would chill self-critical analyses that might benefit the public. Cases are all over the map on whether the self-evaluative privilege exists in employment discrimination cases. The privilege is a creature of the state trial courts, and there is little uniformity of law even within particular states. (Rule 501, Federal Rules of Evidence) One can find several cases recognizing the privilege and several cases rejecting the privilege in the same state.

Even those states which pay lip service to the privilege often find it waived in the employment context. The privilege has been asserted—so far without success—to try to protect harassment investigative reports from disclosure. Courts that recognize the privilege as protecting internal investigations usually find the privilege is waived when the company relies on its investigation as an affirmative defense, as discussed below. *Volpe v. U.S. Airways, Inc.*, 184 F.R.D. 672 (M.D.Fla.1998)

### Privileges Are Waived When Investigation is Offered as Affirmative Defense

Employers in discrimination cases, like Defendants in the case at bar, will use investigations as part of their affirmative defense. Indeed, in the aftermath of *Faragher, Ellerth*[2] and the most recent EEOC regulations, they have little choice.

Defendants like the County in the case at bar assert that they promptly investigated claims and effected the appropriate remedies in order to avoid or limit their liability. In doing so, they lose some or all of the privileges such as the evaluative privilege and the self-critical analysis privilege.

---

**2.** *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Ellerth* *v. Burlington Industries, Inc.*, 524 U.S. 951, 118 S.Ct. 2365, 141 L.Ed.2d 734 (1998)

Several cases have held that defendants also lose the work product and attorney-client privileges once they assert the investigation as an affirmative defense. Similarly, many courts that recognize the self-evaluative privilege in principle, nevertheless order investigation materials produced based on the plaintiff's need for the information.

*See Volpe v. US Airways, Inc., Id.* (employer that relies on thoroughness of internal investigation as defense against sexual harassment charge must disclose to plaintiff notes taken during such investigation); *Johnson v. Rauland–Borg Corp.*, 961 F.Supp. 208 (N.D.Ill.1997) (employer's attorney who investigated complaint of sexual harassment may testify at trial but employer waives any privilege for attorney's prelitigation legal advice by raising its internal investigation as defense to harassment claim); *Pray v. New York City Ballet Co.*, 73 Fair Empl. Prac. Cas. (BNA) 1714, 71 Empl. Prac. Dec. (CCH) 44795, 1997 WL 266980 (S.D.N.Y.1997) (employer's litigation defense counsel, who also served as attorney conducting internal investigation of discrimination complaints, subject to deposition; by asserting thoroughness of investigation as defense in sexual harassment litigation employer waived attorney-client privilege); *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084 (D.N.J.1996) (employer waived attorney-client privilege protection for results of sexual harassment investigation conducted by outside counsel by asserting thoroughness of investigation as defense to harassment claim). *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 68 Cal. Rptr.2d 844 (2d Dist.1997) (investigation documents normally covered by attorney-client privilege or work-product doctrine discoverable because defendant waived protections in raising adequacy of investigation as defense to discrimination claim). *But see Kaiser Foundation Hospitals v. Superior Court*, 66 Cal.App.4th 1217, 78 Cal.Rptr.2d 543 (1st Dist.1998) (attorney-client privilege not waived by employer pleading adequate investigation of sex discrimination complaint if employer has produced substance of relevant in-house investigation by non-attorney personnel pursuant to stipulation that privileges were not waived and seeks to protect only specific communication between those personnel and employer's attorneys).

In *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084 (D.N.J.1996) the defendant had brought in an outside attorney to investigate sex discrimination and sexual harassment claims. The plaintiff sought discovery of the investigative report and also noticed the deposition of the attorney who had completed the investigation. The court found the defendant had waived the attorney-client privilege by putting the investigation in issue. *Id.* at 1096.

A California court reached a similar conclusion in *Wellpoint Health Networks, Inc. v. Superior Court of Los Angeles County*, 59 Cal.App.4th 110, 123, 68 Cal.Rptr.2d 844 (1997). The plaintiff had filed an initial complaint and a law firm was brought in to conduct an investigation. The court found that hiring the law firm created a prima facie presumption that the attorney-client privilege applied. Yet, the defendant's use of the investigation to show that it took reasonable corrective action acted as a waiver of the privilege. *Id.*

> When an employer injects into a lawsuit an issue concerning the adequacy of its investigation, and the investigation was undertaken by an attorney or law firm, a waiver of the traditional protections must be deemed to have occurred. "If a defendant employer hopes to prevail by showing that it investigated an employee's complaint and took action appropriate to the findings of the investigation, then it will have put the adequacy of the investigation directly at issue, and cannot stand on the attorney-client privilege or work product doctrine to preclude a thorough examination of its adequacy."

(59 Cal.App.4th at 128, 68 Cal.Rptr.2d 844.)

The court cautioned, however, that the trial judge should not issue a blanket nullification of the privilege but should make findings on a document-by-document basis, which this court has done in conducting its in camera review.

> The trial judge should not have given plaintiff "carte blanche access" to defendant's investigative file, but should have

based his ruling on the subject matter of each document.

(59 Cal.App.4th at 122, 68 Cal.Rptr.2d 844.)

Work product protection in the *Wellpoint* case also evaporated. The court noted that the defendant waived any work product privilege that may have attached by invoking the investigation in its defense. *See Id., but see Ryall v. Appleton Elec. Co.,* 153 F.R.D. 660, 662 (D.Colo.1994) (court found that the implied waiver of the attorney-client privilege under the circumstances does not also waive any applicable work product privilege).

In *Payton v. New Jersey Turnpike Authority,* the court found that the attorney-client privilege was waived once the employer placed the investigation at issue by asserting it as an affirmative defense. The court opined that materials relating to an internal investigation of sexual harassment are generally discoverable. *See Payton,* 148 N.J. 524, 691 A.2d 321, 335 (1997). The court also found that there was no work product privilege since the investigation had begun months before the plaintiff's suit started. The court also cited the plaintiff's need for the information. *See Id.*

## 1. *Attorney Linda Tripoli's investigative report (Tripoli Report)*

Plaintiff asks this court to order Defendants to turn over withheld portions of a report prepared by Linda Tripoli, an attorney retained by Defendants "to investigate the charge [of employment discrimination] and report to County Counsel on the facts surrounding the charge and the merits ... of the charge." *Jan. 26 Joint Discovery Dispute Statement* at 8. Defendants have already turned over portions of the Tripoli Report to Plaintiff including tapes and transcripts of interviews Ms. Tripoli relied on to prepare the report and parts of the report which summarize Ms. Tripoli's factual investigation.

Defendants withheld the analytical and evaluative portions of the Tripoli Report which they assert contain Ms. Tripoli's legal research and analysis and her evaluation of the merits of the case. Defendants argue that this portion of the report is subject to the attorney client and work product protections and should not be turned over to Plaintiff. Citing a malpractice case from the Eastern District of Michigan as support, Defendants assert that Plaintiff "offers no basis for an order requiring disclosure of such matters." *Taylor v. Temple & Cutler,* 192 F.R.D. 552 (E.D.Mich.1999).

The Tripoli Report, prepared for the County by an attorney in anticipation of litigation, would ordinarily be subject to both work product and attorney client privilege protection. The attorney client privilege applies to the Tripoli Report because it was prepared by an attorney at the direction of the County's attorney with the intent of providing the County with legal advice regarding the merits of Walker's claim. *See Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir.1992). As the Supreme Court noted in *Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Information is privileged if it passes between attorney and client for the purpose of giving or obtaining legal advice.

■ The attorney-client privilege has eight essential elements: "1) where legal advice of any kind is sought; 2) from a legal adviser in his capacity as such; 3) the communications relating to that purpose; 4) made in confidence; 5) by the client; 6) are at his instance permanently protected; 7) from disclosure by himself or by the legal adviser; 8) unless the protection be waived." *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 fn. 2 (9th Cir.1992). The Tripoli Report meets the threshold criteria for a privileged attorney-client communication.

The Tripoli Report may also be protected by the work product doctrine because it was prepared in anticipation of litigation by an attorney for one of the parties to the action now before the Court. *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Although work product protection is not absolute the portions of the report withheld belong to the most protected class of work product because they reflect the mental impressions and legal opinions of Ms. Tripoli.

Walker contends that Defendants waived both privileges by asserting their investigation as an affirmative defense and that he has a legitimate reason for disclosure of the report. Walker argues that Defendants cannot hide behind attorney client privilege or work product protection when the adequacy of Defendants' investigation into Walker's allegation of discrimination is called into question. Walker argues that work product and attorney client privilege are waived when Defendants rely on the report as a defense to allegations of discrimination.

██ If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigation into Walker's claims of discrimination, then they waive the attorney-client privilege and the work product doctrine with respect to documents reflecting that investigation. Where a party puts the adequacy of its pre-litigation investigation at issue by asserting the investigation as a defense, the party must turn over documents related to that investigation, even if they would ordinarily be privileged. *Harding v. Dana Transport, Inc. supra.; Wellpoint Health Networks, Inc., supra.*

Defendants do not address the waiver issue in the January 27 Joint Discovery Dispute Statement. As mentioned above, Defendants merely assert that: "Plaintiff offers no basis for an order requiring disclosure of such matters."

Despite Defendants' bland assertion, they pled as their twelfth affirmative defense that "[P]laintiff's claims are barred because CCCFPD took and had taken reasonable steps to prevent and promptly correct any discrimination and/or harassment in the workplace, and plaintiff unreasonably failed to take advantage of the preventative and corrective opportunities provided by the CCCFPD or avoid harm otherwise."

██ This language indicates that Defendants intend to rely on Ms. Tripoli's investigation as a defense in this action. For that reason Defendants must turn over Ms. Tripoli's report as it pertains to the pre-litigation investigation into Walker's claim of discrimination.

██ However, Ms. Tripoli's legal analysis of the adequacy of Defendants' investigation does not fall within the scope of Defendants'

waiver. Defendants' pre-litigation investigation is relevant to their affirmative defense, but the attorney's intra-litigation analysis of that investigation is not. *See Wellpoint*, 59 Cal.App.4th at 127–128, 68 Cal.Rptr.2d 844, citing *Harding.* Their affirmative defense says nothing about any intra-litigation investigation, only the pre-litigation investigation. Consequently, there is no waiver of the work product doctrine with respect to Tripoli's Findings and Conclusions at the end of the report. These finding are in fact the most protected form of work product: the attorney's legal analysis and opinions. They may reflect her advice to Defendants within this litigation and are therefore shielded from discovery. Accordingly, this Court orders Defendants to disclose to Walker all of the Tripoli Report, with the exception of the Findings and Conclusions.

### 2. *Human Resources Report (Knight Report)*

██ After the Contra Costa County Board of Supervisors became aware of a potential problem resulting from the failure to promote Plaintiff, the Board ordered the Human Resources Department to prepare a report responding to the charges of discrimination. Defendants state that the report "consists of a description of the hiring process, and the evaluation of the Human Resources Director of the compliance of the process with County regulations and its fairness." Defendants have refused to turn over the Knight Report, arguing it is subject to both attorney client privilege and work product protection. They argue that the Knight Report was confidential and was prepared for and presented to the Board by the Human Resources Director acting under the supervision of counsel. In response, Walker argues that Defendants have not met their burden to show the Knight Report is privileged. Walker argues that even if the Knight Report is subject to work product protection, he can show substantial need for the Report and inability to obtain the information by other means. The burden of establishing a privilege is on the discovery opponent *In Re Grand Jury*, 974 F.2d 1068, 1070 (9th Cir.1992).

■ Whether the report is or is not subject to attorney client privilege or work product protection is immaterial in this case because any protection that may have applied is waived by Defendants' stated intent to rely on the investigation as a defense in this action. As mentioned above, Defendants assert as their twelfth affirmative defense that "plaintiff's claims are barred because CCCFPD took and had taken reasonable steps to prevent and promptly correct any discrimination and/or harassment in the workplace, and plaintiff unreasonably failed to take advantage of the preventative and corrective opportunities provided by the CCCFPD or avoid harm otherwise."

The analysis of privilege is slightly different for the Knight Report than for the Tripoli Report. The Knight Report was prepared by a non-attorney at the request of County Counsel for the use of the Board of Supervisors. This brings a slightly different standard of waiver to bear.

A California Court of Appeal distinguished the *Wellpoint* case in *Kaiser Foundation Hosp. v. Superior Court* (1998) 66 Cal. App.4th 1217, 78 Cal.Rptr.2d 543, where the employer's investigation was performed by a non-attorney human resources specialist. In that case, the employer had turned over the human resources report but withheld some attorney-client communications. The employer produced over 90% of its investigation-related documents, but only after obtaining a written stipulation that this production did not constitute a waiver of the attorney-client privilege. After the trial judge granted plaintiffs' motion to compel, the appellate court held this was error, on grounds that the employer had turned over its files and disclosed the substance of its internal investigation as conducted by nonlawyer employees.

The court of appeal affirmed the employer's right under those circumstances to withhold "specified discrete communications which those employees had with their attorneys." The court found that "disclosure of such privileged communications is simply not essential for a thorough examination of the adequacy of the investigation or a fair adjudication of the action."

[i]f an employer has produced the substance of relevant in-house investigations performed by nonattorney personnel and seeks only to protect specific communications between those personnel and the employer's attorneys, the protections afforded by the law for communications between attorneys and their clients are not waived by the employer's pleading of the adequacy of its prelitigation investigation as a defense to an action for employee discrimination or harassment.

*Kaiser Foundation Hospitals v. Superior Court,* 66 Cal.App.4th 1217, 1219 –1220, 78 Cal.Rptr.2d 543 (Cal.App.1.Dist.,1998).

■ In the case at bar, Defendants did not produce the substance of relevant in-house investigations by the Human Resources Department, but nevertheless withheld the Knight Report. Furthermore, this Report contains no attorney-client communications, since it was neither prepared by nor addressed to an attorney, but was prepared by the Human Resources Director for the Board of Supervisors. Nor can it be characterized as opinion work product, because it contains no legal opinions, but is work product only to the extent that it was prepared at the request of County Counsel Marchesi in anticipation of litigation.

Work product protection does not shield the entire Knight Report from discovery. Work product protection, unlike attorney client privilege, is not absolute and can be overcome by a showing of substantial need and inability to obtain the equivalent of the materials through other means. *Fed. R. Civ. Pro. 26(b)(3).* Nevertheless, in ordering discovery of such work product the court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* There is no reason to believe that the Knight Report contains mental impressions, opinions or legal theories of an attorney.

Walker shows substantial need for the report. "Given Chief Walker's contentions that he was discriminated against during the hiring process for assistant chief, Chief Walker will surely suffer undue hardship if he is unable to access the Human Resource Department's investigation of that process." *Jan. 27, 2005 Joint Discovery Dispute Statement* at 6–7. The Knight Report on the

compliance of the investigation with County regulations and the overall fairness of the process will be important in proving or disproving this affirmative defense. Because Walker has shown substantial need, the Knight Report, like the factual portions of the Tripoli Report on the hiring process, must be turned over.

### 3. *Supporting Documents of Defendants' Contentions that Chief Walker acted in an unprofessional manner in public settings; challenged decisions of Fire Protection District Senior Officers; and lacked good judgment on emergency fire scenes*

Defendants were ordered at the hearing to respond to plaintiff's Document Requests No.'s 10, 26, 27, 28. Requests No. 10 asks for documentation concerning allegations of misconduct against Defendant Keith Richter; Request No. 26 requests documents concerning Defendants' contention that Plaintiff acted in an unprofessional manner in public settings; Request No. 27 asks for documents concerning Defendant's contention that Plaintiff challenged the decisions of the Fire Protection District Senior Officers; and Request No. 28 asks for documents concerning Defendant's contention that Plaintiff lacked good judgment on emergency fire scenes.

Defendants argue that Requests No. 26,-27,28 are improperly based on statements contained in a confidential settlement statement and notes in passing that all responsive documents have been turned over. Defendants devote most of their effort to arguing that it is improper to extract a party's factual contentions word for word from confidential settlement proceedings and set them out in public discovery documents as the basis for discovery requests.

Walker contends that the requests are based not on settlement statements but rather on statements contained in the Dec. 15 Joint Case Management Statement and on the deposition of Defendant Richter. Walker did not provide the Court with a copy of Defendant Richter's deposition, so there is no way to verify that the requests are based on that deposition, but the Dec. 15 Joint Case Management Statement does refer to allegations that Plaintiff "demonstrated by vocal and public criticism his opposition to District Policies and was openly critical of Fire Chief Richter's administration of the District" and that Plaintiff "demonstrated a lack of managerial and operational judgement in specific areas in the years before his application for the position in 2003."

Although the language in the Joint Case Management Statement does not exactly match the language cited in the Joint Discovery Dispute Statement now before the Court, the basic premise is the same. In both, Defendants contend that Walker publicly challenged the decisions of Fire Protection District Senior Officers. Such a charge could form the basis of a defense that Walker acted in an unprofessional manner in public. In both instances Defendants contend that Walker showed poor judgment.

This Court cannot know whether the language contained in the requests for documents mirrors language in the confidential settlement statement, but whether it does or does not is irrelevant, since the basic allegations are contained in the Dec. 15 Joint Case Management Statement. The requests are for documents relevant to issues in dispute. For that reason the Court ordered Defendants to turn over all responsive documents within ten days of the hearing.

### Conclusion and Order

Because Defendants waived attorney client privilege and work product protection when they asserted the County's internal pre-litigation investigation as an affirmative defense, fairness dictates that Defendants on or before April 25, 2005 turn over all documents pertaining to that investigation, including the factual portions of the Tripoli Report and all of the Knight Report. Defendants should also by now have turned over all documents responsive to Plaintiff's Document Requests Nos. 10, 26, 27 and 28.

IT IS SO ORDERED.