Filed 6/8/16; pub. order 6/30/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF PETALUMA,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SONOMA COUNTY,<br><br>        Respondent;<br><br>ANDREA WATERS,<br><br>        Real Party in Interest. | A145437<br><br>(Sonoma County<br>Super. Ct. No. SCV 256309) |

This writ proceeding requires us to resolve two questions related to whether an employer's prelitigation investigation of an employee's harassment and discrimination claims is protected from disclosure in discovery. As an initial matter, we consider whether the employer's prelitigation factual investigation is protected by the attorney-client privilege or work product doctrine when the investigation is undertaken by outside counsel who is specifically directed not to provide legal advice as to which course of action to take. If we conclude the investigation is privileged, we must next consider whether the employer's assertion of an "avoidable consequences" defense waives any applicable claim of privilege when the investigation was initiated *after* the employee had already left his or her job with the employer.

The trial court ruled in favor of the former employee on the privilege issue, concluding that outside counsel was acting as a fact finder and not an attorney who was

1

providing legal advice.  The court also concluded the employer waived any privilege that might be claimed by asserting an avoidable consequences defense and thereby placing the investigation at issue.

We conclude the trial court erred.  The dominant purpose of outside counsel's factual investigation was to provide legal services to the employer in anticipation of litigation.  Outside counsel was not required to give legal advice as to what course of action to pursue in order for the attorney-client privilege to apply.  Further, the privilege was not waived by the employer's assertion of an avoidable consequences defense under the circumstances presented here.

## FACTUAL AND PROCEDURAL HISTORY

Andrea Waters began working as a firefighter and paramedic for the City of Petaluma (City) in 2008.  She was the first and only woman to hold that position.  She claims she was immediately subjected to harassment and discrimination based upon her sex.  According to Waters, she was subjected to retaliation when she complained.  For its part, the City maintains that its records show that Waters never complained to her supervisors, to City supervisors, or to anyone in the City's human resources department about harassment or discrimination.

In February 2014, Waters went on leave from her job with the City.  In May of that same year, the City received a notice of charge of discrimination from the U.S. Equal Employment Opportunity Commission (EEOC) indicating that Waters had filed a charge with the EEOC alleging sexual harassment and retaliation pertaining to the terms and conditions of her employment and training.  According to the City, the EEOC notice was the first indication it had that Waters felt she had been the subject of discrimination and harassment at work.  Just days after the City received the EEOC notice, and while Waters was still on leave from her job, she voluntarily resigned her position as a City firefighter and paramedic.

The City has a policy and practice of investigating every claim of harassment or retaliation in the workplace.  Depending upon the nature of the claims, the investigation may be conducted by City staff or an outside investigator.

2

As a consequence of the fact that Waters had resigned shortly after filing her EEOC charge, City Attorney Eric Danly (City Attorney) concluded that Waters was not seeking corrective action but was instead exhausting her administrative remedies before filing suit against the City. On June 11, 2014, the City Attorney retained outside counsel, the law offices of Amy Oppenheimer (Oppenheimer), to investigate Waters's EEOC charge and to assist him in preparing to defend the City in the anticipated lawsuit. The City Attorney's office could have conducted the investigation itself but chose to retain Oppenheimer to benefit from her legal expertise and experience of over 30 years in employment law. The City Attorney wanted to ensure that the investigative report as well as related notes and analysis would be subject to the attorney-client privilege and work product doctrine just as if the investigation had been conducted by the City Attorney's office.

The retention agreement between the City and Oppenheimer specified that Oppenheimer was retained to do an impartial investigation of an EEOC complaint filed by Waters. As set forth in the agreement, Oppenheimer was required to "interview witnesses, collect and review pertinent information, and report to you on that information." Oppenheimer agreed to "tell [the City] what we believe happened, and the basis for that conclusion." Oppenheimer promised to arrive at "findings based on an impartial and professional evaluation of the evidence." The agreement stated that it created "an attorney/client relationship" between the City and Oppenheimer and further provided as follows: "As attorneys, we will use our employment law and investigation expertise to assist you in determining the issues to be investigated and conduct impartial fact-finding." The agreement further specified that the investigation would be subject to the attorney-client privilege until the City waived the privilege or a court determined that some or all of the investigation was not subject to the privilege.

Although the retention agreement anticipated that Oppenheimer would offer a professional evaluation of the evidence based upon her experience in employment law, the agreement stopped short of asking Oppenheimer to advise the City on what to do in response to Waters's EEOC complaint. Specifically, the agreement provided: "It is

3

understood that in this engagement we will not render legal advice as to what action to take as a result of the findings of the investigation." As set forth in the agreement, the City Attorney was "solely responsible for providing the City legal advice relating to this matter," including "the legal implications and actions the City should take based on the results of the investigations . . . ."

Oppenheimer provided a written report to the City as required by the terms of her retention. She provided the report to the City only and not to the City's fire department or any member of its staff. Every page of her report contains an indication that it is confidential and attorney-client privileged. Oppenheimer claims she was zealous in preserving the report's confidential status and in transmitting the report to the City in confidence. According to the City Attorney, all communications with Oppenheimer and work product submitted by her have been maintained in confidence and not disclosed to anyone outside the attorney-client relationship.

Waters filed suit against the City in November 2014. She alleged causes of action under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA) for hostile environment harassment, discrimination based upon sex, retaliation in violation of FEHA, and failure to prevent harassment, discrimination, and retaliation from occurring.

In its answer to the complaint, the City generally denied the allegations of the complaint and asserted various affirmative defenses, including alleging in its eighteenth affirmative defense that it exercised reasonable care to prevent or correct instances of unlawful harassment or discrimination but that Waters had "unreasonably failed to take advantage of any preventative or corrective opportunities or to otherwise avoid harm." The City further alleged in its twenty-first affirmative defense that any claims or damages were barred in whole or in part by Waters's "failure to take reasonable and necessary steps to avoid the harms and/or consequences [she] allegedly suffered." Taken together, these two affirmative defenses make up the "avoidable consequences doctrine."

In discovery requests served on the City, Waters sought documents and testimony relating to the City's investigation of her complaint, including the investigative report prepared by Oppenheimer. The City objected to every request seeking production of

4

Oppenheimer's report and other materials bearing on the investigation on the ground they were protected by the attorney-client privilege or work product doctrine.

Waters moved to compel production of documents and testimony relating to the investigation of her EEOC complaint. She claimed the investigation was not privileged and, that even if it was privileged, the City had waived any applicable privileges by placing the investigation at issue.

The trial court granted the motion to compel. The court concluded that the documents and information sought by Waters are not subject to either the attorney-client privilege or work product protection. It reasoned that Oppenheimer's investigation and report cannot be construed to constitute attorney-client communications because the terms of Oppenheimer's engagement specified that she would not render legal advice. The court observed that, even if Oppenheimer had offered legal advice, the privilege would extend only to communications containing legal advice and not to the factual investigation. The court also concluded that any applicable privilege had been waived because the City put the investigation at issue by asserting an avoidable consequences defense. It did not suggest Waters had failed to take advantage of preventative or corrective opportunities that resulted from the investigation, which was initiated only after Waters left her job. Instead, the court explained that the investigation was the "best evidence" of what the City "would have done earlier" if Waters had pursued her complaints while still employed.

The City filed a petition for writ of mandate in this court challenging the trial court's order. After we denied the petition, the Supreme Court granted a writ of review and transferred the matter back to this court with directions to issue an order to show cause why the relief requested by the City should not be granted. We issued an order to show cause at the Supreme Court's direction.

## DISCUSSION

### 1. *Scope and propriety of writ review*

Interlocutory writ review of discovery rulings is ordinarily limited to situations involving (1) an issue of first impression that is of general importance to the legal

5

profession, (2) an order denying discovery that effectively precludes a litigant from having a fair opportunity to litigate his or her case, or (3) a ruling compelling discovery that violates a privilege. (*OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 886 (*OXY Resources*).) Writ review is appropriate here because the trial court's order compelling production of documents and testimony violates a privilege allegedly held by the City. An appeal following a final judgment does not offer an adequate remedy because there is no way to undo the harm resulting from the disclosure of privileged materials. (*Ibid.*)

We apply the abuse of discretion standard in reviewing discovery rulings. (*OXY Resources, supra,* 115 Cal.App.4th at p. 887.) A court abuses its discretion when it applies the wrong legal standard. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*).) "[W]hen the facts asserted in support of and in opposition to the motion are in conflict, the trial court's factual findings will be upheld if they are supported by substantial evidence." (*Ibid.*) However, we apply independent review to the trial court's conclusions as to the legal significance of the facts. (Cf. *Dorel Industries, Inc. v. Superior Court* (2005) 134 Cal.App.4th 1267, 1273.)

**2.      *Principles governing attorney-client privilege and work product doctrine***

The attorney-client privilege, which is set forth in Evidence Code section 954, confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." The fundamental purpose of the privilege " 'is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding legal matters.' " (*Costco, supra,* 47 Cal.4th at p. 732.) The privilege is absolute and precludes disclosure of confidential communications even though they may be highly relevant to a dispute. (*Ibid.*)

A party that seeks to protect communications from disclosure based upon the attorney-client privilege must establish the preliminary facts necessary to support its exercise—i.e., a communication made in the course of an attorney-client relationship. (*Costco, supra,* 47 Cal.4th at p. 733.) "Once that party establishes facts necessary to

6

support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." (*Ibid.*)

An attorney-client relationship exists when the parties satisfy the definitions of "lawyer" and "client" as specified in Evidence Code sections 950 and 951, respectively. For purposes of the attorney-client privilege, "client" is defined in relevant part as "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal *service or advice* from him in his professional capacity . . . ." (Evid. Code, § 951, italics added.) A "confidential communication" means "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence" by confidential means. (Evid. Code, § 952.) A confidential communication may include "a legal opinion formed and the advice given by the lawyer in the course of that relationship." (*Ibid.*)

In assessing whether a communication is privileged, the initial focus of the inquiry is on the "dominant purpose *of the relationship*" between attorney and client and not on the purpose served by the individual communication. (*Costco, supra,* 47 Cal.4th at pp. 739–740.) If a court determines that communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by other means." (*Id.* at p. 740.)

The attorney work product doctrine is codified in section 2018.010 et seq. of the Code of Civil Procedure. The meaning of "client" for purposes of the work product doctrine is the same as that used for the attorney-client privilege. (Code Civ. Proc., § 2018.010.) The attorney work product doctrine serves the policy goals of "preserv[ing] the rights of attorneys to . . . investigate not only the favorable but [also] the unfavorable aspects" of cases and to "[p]revent attorneys from taking undue advantage of their adversary's industry and efforts." (Code Civ. Proc., § 2018.020, subds. (a) & (b).)

" 'The work product rule in California creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions or legal theories.' " (*Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 120 (*Wellpoint*); Code Civ. Proc., § 2018.030.)  An attorney's work product that is subject to a qualified privilege is not discoverable unless a court determines that denial of discovery would unfairly prejudice the party seeking discovery or result in an injustice.  (Code Civ. Proc., § 2018.030, subd. (b).)

The protections of the attorney-client privilege and the work product doctrine may be waived by disclosure of privileged communications or work product to a party outside the attorney-client relationship if the disclosure is inconsistent with goals of maintaining confidentiality or safeguarding the attorney's work product.  (See *OXY Resources, supra,* 115 Cal.App.4th at pp. 890–891.)  Although the attorney-client privilege and work product doctrine are both subject to waiver, there are important distinctions between the two.  Among other things, the attorney-client privilege applies only to communications (Evid. Code, § 954) whereas work product protection applies irrespective of whether any material claimed to be privileged is communicated to the client.

With these principles in mind, we turn to the issues raised by the City's petition.

**3.**     ***Treating prelitigation factual investigation as privileged***

The City contends the factual investigation is protected by the attorney-client privilege and the work product doctrine because it retained outside counsel to provide legal services.  In rejecting the City's claim of privilege, the trial court focused on the fact that the terms of outside counsel's retention did not extend to providing legal *advice* to the City.  Waters takes the position that outside counsel's services were limited to a role as a fact finder without any evidence to suggest counsel was retained to provide a legal service.  For the reasons that follow, we agree with the City that it had an attorney-client relationship with outside counsel even though counsel's role was limited to a factual investigation and did not extend to providing legal advice as to which course of action to take based upon the results of the investigation.

8

As an initial matter, Waters claims we are obligated to defer to the lower court's factual findings—including its conclusion that there was no attorney-client relationship between the City and Oppenheimer—unless the factual findings are not supported by substantial evidence. We do not agree that deference is owed to the trial court's conclusions under the circumstances presented here, where the relevant facts are undisputed. Waters does not dispute the terms of Oppenheimer's retention or the circumstances that led the City to retain outside counsel. Instead, she disputes the legal significance of the facts. Specifically, the legal question of whether an attorney-client relationship was created turns on one undisputed fact—while Oppenheimer was asked to investigate the facts underlying Waters's EEOC complaint, she was not retained to provide legal advice based upon her findings. This purely legal issue is subject to our independent review.

We begin by noting that the statute defining a "client" for purposes of the attorney-client privilege and the work product doctrine refers to a person who retains a lawyer for securing "legal service *or* advice" in the attorney's professional capacity. (Evid. Code, § 951, italics added; see *Montebello Rose Co. v Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 32 [dominant purpose must be to "secure or render legal service or advice"].) The plain terms of the statute support the conclusion that an attorney-client relationship may exist when an attorney provides a legal service without also providing advice. The rendering of legal advice is not required for the privilege to apply.

As the United States Supreme Court has recognized, "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." (*Upjohn Co. v. United States* (1981) 449 U.S. 383, 390–391.) It is for this reason that "fact-finding which pertains to legal advice counts as 'professional legal services.' " (*United States v. Rowe* (9th Cir. 1996) 96 F.3d 1294, 1297.)

Here, Oppenheimer was retained to provide a legal service because she was hired to act as an attorney in bringing her legal skills to bear to assist the City in developing a

9

response to Waters's EEOC complaint and the anticipated lawsuit. The retention agreement not only expressly specified that it created an attorney-client relationship, but is also provided that Oppenheimer would use her expertise in employment law to arrive at findings based upon her "professional evaluation of the evidence." She was not merely a fact finder whose sole task was to gather information and transmit it to the City, as Waters suggests. Instead, she was expected to use her legal expertise to identify the pertinent facts, synthesize the evidence, and come to a conclusion as to what actually happened. The dominant purpose of Oppenheimer's representation was to provide professional legal services to the City Attorney so that he, in turn, could advise the City on the appropriate course of action.

Our conclusion is consistent with the approach taken by the court in *Wellpoint, supra,* 59 Cal.App.4th 110, a case upon which the trial court relied. In *Wellpoint,* the court considered a claim that outside counsel was acting in a nonattorney capacity when he undertook an investigation of an employee's discrimination complaints. (*Id.* at pp. 121–123.) The court reviewed a number of cases in which courts had determined that the attorney-client privilege did not apply because the dominant purpose of the attorney's relationship with the client was not to provide legal services. (*Id.* at pp. 121–122.) In one such case, the attorney acted as a labor negotiator. In another, the attorney acted as the client's business agent. (*Ibid.*) The *Wellpoint* court concluded these cases did not support a "blanket rule excluding attorney investigations of employer discrimination from attorney-client and work product protection . . . ." (*Id.* at p. 122.)

The court in *Wellpoint* went on to conclude that the employer had established "facts necessary to support a prima facie claim of privilege, i.e., communications in the course of the lawyer-client relationship" by virtue of the fact that it was undisputed the attorney was hired by the employer "to conduct an investigation of the charges of discrimination." (*Wellpoint, supra,* 59 Cal.App.4th at p. 123.) According to the court, the employee had failed to meet his burden to oppose the claim of privilege "by simply asserting . . . that [the attorney] was engaged in a fact-finding mission." (*Id.* at p. 124.) The court noted that it might have been urged that the attorney was engaged in "routine

10

fact-finding on behalf of the company's personnel department rather than legal work," but that no such evidence had been presented on this point.  (*Ibid.*)

Here, just as in *Wellpoint,* the City established a prima facie claim of privilege by presenting undisputed evidence that Oppenheimer was retained to use her legal expertise to conduct a factual investigation that would, in turn, be the basis for the City Attorney to provide legal advice to the city.  Waters did not present any relevant evidence to contradict the claim of privilege.

Our conclusion that Oppenheimer's investigation constituted the provision of legal services to a client supports not only the application of the attorney-client privilege, but also supports the application of the work product doctrine to her investigative efforts.  (Cf. Code Civ. Proc., § 2018.010 ["client" means the same thing for both attorney-client privilege and work product doctrine].)

**4.      *Waiver by virtue of asserting avoidable consequences defense***

The trial court ruled the City had waived any claim of privilege that might otherwise protect outside counsel's factual investigation by asserting an avoidable consequences defense.  As explained below, we conclude that an employer does not waive any applicable privileges associated with an investigation conducted *after* the employee leaves his or her employment when the employer asserts an avoidable consequences defense.

Our Supreme Court has described the avoidable consequences doctrine as follows: "[I]n a FEHA action against an employer for hostile environment sexual harassment by a supervisor, an employer may plead and prove a defense based on the avoidable consequences doctrine.  In this particular context, the defense has three elements: (1) the employer took reasonable steps to prevent and correct workplace sexual harassment; (2) the employee unreasonably failed to use the preventive and corrective measures that the employer provided; and (3) reasonable use of the employer's procedures would have prevented at least some of the harm that the employee suffered."  (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1044.)  The defense allows an employer to escape liability for those damages "the employee more likely than not could

11

have prevented with reasonable effort and without undue risk, expense, or humiliation, by taking advantage of the employer's internal complaint procedures appropriately designed to prevent and eliminate sexual harassment." (*Ibid.*)

In *Wellpoint, supra,* 59 Cal.App.4th at page 125, the court considered whether an employer waived any attorney-client or work product protections associated with a prelitigation investigation by raising the investigation as a defense to harassment claims. The court agreed with the proposition that "the employer's injection into the lawsuit of an issue concerning the adequacy of the investigation where the investigation was undertaken by an attorney or law firm must result in waiver of the attorney-client privilege and work product doctrine." (*Id.* at p. 128.) "If a defendant employer hopes to prevail by showing that it investigated an employee's complaint and took action appropriate to the findings of the investigation, then it will have put the adequacy of the investigation directly at issue, and cannot stand on the attorney-client privilege or work product doctrine to preclude a thorough examination of its adequacy." (*Ibid.*)

The avoidable consequence defense focuses upon what the employer and employee did or did not do while the employee was employed. The assertion of the avoidable consequences defense may put the adequacy of an investigation into issue if the person was still employed and able to take advantage of any corrective measures the employer undertook as a result of the investigation. The investigation may also be relied upon to show that the employer took reasonable steps to prevent and correct workplace sexual harassment while the employee was employed. But the assertion of an avoidable consequences defense does not put a post-employment investigation directly at issue in the litigation. The employee necessarily could not have taken advantage of any corrective measures adopted in response to a post-employment investigation. Further, a post-employment investigation would not itself demonstrate that the employer took reasonable steps to prevent and correct workplace harassment while the employee was still employed.

Here, the City does not seek to rely on the post-employment investigation itself as a defense, nor could it. Accordingly, the City's assertion of the avoidable consequences

12

doctrine does not constitute a waiver of any attorney-client or work product protection afforded to the post-employment investigation conducted by Oppenheimer.

**5.     *Issues upon remand***

Waters urges that, even if we conclude the Oppenheimer report is privileged and that assertion of the avoidable consequences defense does not waive any applicable privileges, we should still remand the matter to the trial court to allow it to consider which of the various materials it ordered released by the City are subject to attorney-client or work product protection. We agree with Waters that remand is appropriate for this purpose.

The record provided to this court does not include a privilege log or other itemization of documents or materials withheld as privileged. Accordingly, we are in no position to rule upon any particular items relating to the investigation that were withheld as privileged with the exception of the investigative report itself, which is protected by the attorney-client privilege and work product doctrine. Waters speculates that there may be taped interviews and interview notes, among other items related to the investigation. We leave it to the trial court in the first instance to consider whether any such items must be produced by the City because they are not protected from disclosure by an applicable privilege.

**DISPOSITION**

A peremptory writ of mandate shall issue directing respondent superior court to vacate its order of May 19, 2015, granting Waters's motion to compel. The matter is remanded for further proceedings consistent with this opinion. The City shall recover the costs incurred in this writ proceeding.

13

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Jenkins, J.

A145437

Filed 6/30/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF PETALUMA, | A145437 |
|     Petitioner, | |
| v. | (Sonoma County<br>Super. Ct. No. SCV 256309) |
| THE SUPERIOR COURT OF SONOMA COUNTY, | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
|     Respondent; | |
| ANDREA WATERS, | |
|     Real Party in Interest. | |

**THE COURT:**

The opinion in the above-entitled matter filed on June 8, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Dated: _____          _____

                                        McGuiness, P.J.

1

<u>City of Petaluma v. The Superior Court of Sonoma County</u>

(A145437)


Trial Court:          Sonoma County


Trial Judge:          Hon. Elliot Lee Daum


Attorneys:            City of Petaluma, Eric W. Danly, City Attorney; Burke, Williams, &
                      Sorenson, Samantha W. Zutler; Greines, Martin, Stein & Richland,
                      Timothy T. Coates, Alison M. Turner for Defendant and Petitioner.

                      Renne Sloan Holtzman Sakai; Nikki Hall, Ivan Delventhal for The
                      League of California Cities, California State Association of
                      Counties, California Association of Joint Powers Authorities, and
                      California Special Districts Association as Amici Curiae on behalf of
                      Defendant and Petitioner.

                      Cooper, White & Cooper; Mark L. Tuft, Sarah J. Banola for
                      Association of Workplace Investigators, Inc. as Amicus Curiae on
                      behalf of Defendant and Petitioner.

                      Kerley Schaffer, J. Edward Kerley, Dylan Schaffer; Kochan &
                      Stephenson, Deborah Kochan, Mathew Stephenson for Plaintiff and
                      Real Party in Interest.