Filed 5/20/24  Paknad v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHELLE PAKNAD, | No. H050711 |
| Petitioner, | (Santa Clara County Super. Ct. No. 19CV350641) |
| v. | |
| THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Respondent, | [NO CHANGE IN JUDGMENT] |
| INTUITIVE SURGICAL, INC., et al., | |
| Real Parties in Interest. | |

THE COURT:

It is ordered that the opinion filed April 29, 2024, be modified as follows:

On page 3, line 4, the section heading "A. *Allegations of the Operative Complaint*," is modified to read:  "A. *Paknad's Allegations in the Trial Court*."

On page 5, the last sentence of the first full paragraph is modified to read:

Because of the first investigation, Heesewijk and Collins received written warnings.  Hill also told Paknad that Intuitive had "agreed that [Paknad] should get a new lateral role with the same title and pay."

The petition for rehearing filed on behalf of Michelle Paknad is denied.

There is no change in the judgment.

_____
GREENWOOD, P. J.


_____
LIE, J.


_____
WILSON, J.


*Paknad v. Superior Court*
H050711

Filed 4/29/24 Paknad v. Superior Court CA6 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHELLE PAKNAD,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA,<br><br>    Respondent,<br><br>INTUITIVE SURGICAL, INC., et al.,<br><br>    Real Parties in Interest. | No. H050711<br>(Santa Clara<br> Super. Ct. No. 19CV350641) |

Michelle Paknad sued her former employers, Intuitive Surgical, Inc. and Intuitive Surgical Operations, Inc. (collectively, Intuitive), and former supervisors, Jeroen van Heesewijk and Kevin Collins, for sexual harassment, gender discrimination, and unlawful retaliation. While still Intuitive's employee, Paknad made two formal complaints, which Intuitive retained outside counsel, Andrea Kelly Smethurst (Smethurst), to investigate. Smethurst prepared two reports in connection with the investigations (the Smethurst reports), which she shared with company management and litigation counsel, Littler Mendelson.[1]

---

[1] For clarity, we refer to Andrea Kelly Smethurst as "outside counsel," and Intuitive's employment counsel, Littler Mendelson, as "litigation counsel."

Paknad requested the Smethurst reports and related investigative materials in discovery. Citing the attorney-client privilege and attorney work product doctrine, Intuitive provided only the names of the witnesses Smethurst had interviewed and the non-privileged documents Smethurst had reviewed in preparing her reports. Paknad subsequently moved to compel disclosure, which the trial court denied.

Paknad petitioned this court for a peremptory or alternative writ directing the trial court to reverse its ruling. Following preliminary opposition from Intuitive, we summarily denied the petition. Paknad then petitioned for review with the Supreme Court, which granted the petition and transferred the matter with instructions to issue an order to show cause.[2] Having done so, we now conclude that Intuitive's assertion of the avoidable consequences defense and its discovery responses placed the Smethurst investigations at issue, such that the attorney-client privilege is waived and disclosure of the material " 'is essential for a fair adjudication of the action.' " (*Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 128 (*Wellpoint*).)

We will issue a peremptory writ of mandate directing the trial court to vacate its November 28, 2022 order denying in part Paknad's motion to compel, and to enter a new order granting the motion as to the Smethurst reports and related investigative materials. Upon a preliminary showing that such materials may contain absolutely privileged information protected under Code of Civil Procedure section 2018.030, subdivision (a) (section 2018.030(a)), the trial court may review the reports in camera "to determine if some protection is warranted notwithstanding the waiver" of the attorney-client privilege.

---

[2] Paknad has requested that we take judicial notice of her petition for review, Intuitive's answer, and her reply, filed in the Supreme Court in case No. S281065. We deny Paknad's request: The parties' briefing in the Supreme Court was not before the respondent court, and our task is to review the correctness of the respondent court's order based on the record before it, rather than " 'circumventing the normal sequence of litigation.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)

(*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 740 (*Costco*)*;* see also *People v. Superior Court (Jones)* (2021) 12 Cal.5th 348, 366 (*Jones*).)

## I. BACKGROUND

### A. *Allegations of the Operative Complaint*

Intuitive develops, manufactures, and markets robotic devices designed to make surgeries and other medical procedures less invasive. Intuitive markets and sells its devices around the world. In 2010, Intuitive hired Paknad as a senior marketing manager in its Sunnyvale office. Intuitive promoted Paknad to the role of director in 2015. Paknad remained in that role until December 2018, at which time Intuitive terminated her employment.

Paknad alleges that she suffered from sexual harassment, gender discrimination, and illegal retaliation throughout her employment. The alleged discrimination and harassment began in 2012, when Paknad's then-direct supervisor, Greg Blair, began "making her uncomfortable with his workplace behavior" by "follow[ing] [her] around the office and to the restroom on occasion."

Paknad continued to suffer from discrimination and harassment after she transitioned to a more international role in 2014. While working as a part of the Asian-Pacific (APAC) team, Paknad's direct supervisors included (at various times) Heesewijk, Collins, or both. Paknad alleged that Heesewijk engaged in "unwanted sexual conduct toward [Paknad], which created a hostile, offensive, oppressive, and intimidating work environment," and "made it more difficult for [Paknad] to do her job." Heesewijk's alleged misconduct started some time before October 2014 and continued until 2018.

Paknad alleged that Collins "unfairly targeted" her as well, first as a colleague, and later, as her supervisor. In 2015, while working together on a project, Collins called Paknad the "red-headed stepchild" of Intuitive. Upon becoming her supervisor in 2016, Collins allegedly reached out to another employee to get personal information about

3

Paknad, "including . . . whether [Paknad] liked to party, whether she liked to drink or get drunk, and what her sexual preferences were." Once in 2016, Collins called Paknad in the middle of the night to reprimand her for a mistake she did not make.

Paknad also alleged that Heesewijk and Collins illegally retaliated against her for raising compliance issues. The retaliation took the form of disparately restricting her marketing budget, failing to support her at company events, openly ridiculing her during presentations, and sabotaging her opportunities to seek other positions within the company. Paknad attempted to discuss some of her concerns with Heesewijk and Collins in 2017, but both men "criticized and ridiculed [Paknad] for asking for help." When Paknad persisted, Collins "referred [Paknad] to H[uman] R[esources] for any further discussion."

In January 2018, Collins informed Paknad that "she was going to be replaced," but that if another role opened up at Intuitive, "she might be able to interview for it." In March 2018, Heesewijk confirmed to Paknad that her current role "would be eliminated at the end of 2018, as a result of which [Paknad] could look for a new role at [Intuitive]." Paknad began discussing opportunities with other supervisors at the company, but failed to secure a new position due to Heesewijk and Collins's alleged retaliation and sabotage.

In April 2018, Paknad filed her first formal complaint with Intuitive's Employee Relations department, alleging "discrimination, harassment, and retaliation" against Heesewijk and Collins. In response, Nancy L. Hill, then-Vice President of Employee Relations, informed Paknad that the company had "engaged Andrea Kelly Smethurst, an attorney and investigator, to look into these issues." Smethurst completed her investigation in June 2018 and prepared a report totaling "over 30 pages." On June 12, 2018, Hill met with Paknad to discuss the outcome of Smethurst's investigation. During the meeting, Hill shared with Paknad select "bullet points" from the first Smethurst report, including the following: (1) Smethurst confirmed that Collins had singled Paknad out for negative behavior, (2) Smethurst substantiated one of Paknad's sexual harassment

4

allegations against Collins, and (3) Smethurst found that Heesewijk and Collins had made "false and defamatory accusations" about Paknad to others at the company.

Hill told Paknad that Heesewijk and Collins would retain their current roles at the company, but would receive "some form of punishment" as a result of Smethurst's findings. When Paknad asked Hill about "all the bullying, compliance concerns and disparate treatment" she had complained about, Hill responded that "the focus of the investigation was the transition as you requested." Paknad disagreed with Hill that her complaint was limited to transition issues. Because of the first investigation, Heesewijk and Collins received written warnings and Paknad received a "new lateral role with the same title and pay."

In August 2018, Paknad filed a second complaint, alleging that Heesewijk and Collins were retaliating against her in response to her prior complaint. By this time, Debbie D. Lauber had replaced Hill in Employee Relations and reached out to Paknad to assure her that Intuitive "takes very seriously its obligation to ensure employees are protected from retaliation following the submission of a complaint and/or closure of an investigation." Lauber informed Paknad that the company had once again "engaged Andrea Kelly Smethurst, an outside, independent investigator to conduct an investigation into [Paknad's] claims of retaliation." Smethurst's second investigation lasted through November 2018, and the scope of the investigation was expanded many times at Paknad's request. Smethurst also interviewed Paknad for "more than seven hours" in connection with her second complaint. Upon conclusion of the investigation, Smethurst prepared a second report, which she shared with Intuitive's legal department and litigation counsel.

After Smethurst completed her second investigation and report, Lauber notified Paknad of Intuitive's findings based on the report and provided her with a written summary. That same day, Paknad responded to Lauber, challenging the "thoroughness and credibility" of the investigation and inquiring into reasons why many aspects of her

5

complaints were "bifurcated / not properly explored." Paknad continued to criticize the second investigation throughout her employment, maintaining that Smethurst had "failed to thoroughly investigate [her] claims of harassment, and did not evaluate the pervasiveness or severity nor did she interview any witnesses." Paknad also claimed that "[m]any of [her] allegations are missing from the [report's] findings and 'facts' are verifiably incorrect." In her operative complaint, Paknad alleged that during the second Smethurst investigation, "half her concerns had not even been addressed . . . and the outcome, as expected, was skewed to blame [Paknad] and support [Intuitive], Heesewijk, and Collins."

Intuitive terminated Paknad's employment at the end of 2018. Paknad subsequently sued Intuitive, Heesewijk, and Collins, alleging these eight causes of action: (1) sex and gender discrimination—against Intuitive (Gov. Code,[3] § 12940, subd. (a)), (2) quid pro quo sexual harassment—against Intuitive, Heesewijk, and Collins (§ 12940, subd. (j)), (3) hostile work environment sexual harassment—against Intuitive, Heesewijk, and Collins (§ 12940, subd. (j)), (4) retaliation—against Intuitive (§ 12940, subd. (h)), (5) failure to take all reasonable steps necessary to prevent and correct discrimination, harassment, and retaliation—against Intuitive (§ 12940, subd. (k)), (6) wrongful discharge—against Intuitive, (7) violation of Labor Code section 1102.5—against Intuitive, and (8) negligent hiring, retention, and supervision—against Intuitive.

**B.**     *Intuitive's Answer*

Intuitive generally denied Paknad's complaint. It also raised 19 affirmative defenses. As the fourth of these, Intuitive alleged: "[A]t all times relevant, [Intuitive] promulgated an anti-harassment, anti-discrimination, and anti-retaliation policy and complaint procedure which was communicated to [p]laintiff, and [Intuitive] otherwise exercised reasonable care to promptly prevent and correct any inappropriate conduct."

---

[3] Undesignated statutory references are to the Government Code.

Intuitive also alleged that Paknad's claims "are barred, in whole or in part, because [she] unreasonably failed to take advantage of the established complaint procedures, failed to take advantage of other preventative or correcti[ve] opportunities provided by [Intuitive], and otherwise failed to avoid harm."

## C.     *Paknad's Discovery Request and Motion to Compel*

On Paknad's request for "[d]ocuments relating to [her] internal complaints of discrimination, harassment, and retaliation, including reports, witness statements, and summaries of witness testimony; and documents relating to any actions taken in response to these complaints," Intuitive withheld responsive documents it asserted were protected by the attorney-client privilege and attorney work product doctrine. According to Intuitive's privilege logs, the withheld documents comprised the following: (1) the two Smethurst reports, (2) Smethurst's notes from witness interviews conducted during the investigations, and (3) Smethurst's communications with company management relating to the investigations.

Paknad moved to compel disclosure of the withheld documents. Paknad first argued that because Intuitive retained Smethurst in her capacity as a fact finder, the attorney-client privilege did not apply. Second, even if the privilege did apply, Paknad argued that it was waived because, as she asserted in a supporting declaration, Intuitive had already disclosed "substantial amounts" of the reports and investigations to her. Third, Paknad argued that by asserting the avoidable consequences defense, Intuitive had placed the Smethurst investigations at issue. Finally, Paknad argued that she had substantial need of the reports and related investigative materials to prove her claims and rebut Intuitive's defenses. Intuitive opposed the motion.

## D.     *The Trial Court's Ruling*

The trial court denied Paknad's motion to compel. The court first determined that an attorney-client relationship existed between Smethurst and Intuitive because Intuitive had presented sufficient facts to "support a prima facie showing that attorney Smethurst,

with legal expertise relevant to the claims of [Paknad], was hired by defendant to conduct an investigation of pertinent facts, and with her legal expertise, synthesize the findings, and provide conclusions and impressions for review and consideration by management and outside employment counsel of defendant." The court further found that Paknad's account of "statements . . . by Smethurst that the attorney was hired for a fact-finding purpose" failed to overcome that showing.

Based on these findings, the trial court concluded that "the dominant purpose of the representation of Smethurst was to provide legal services to [Intuitive] so that [Intuitive], with further consultation with outside employment counsel, could determine an appropriate course of action." To that end, the reports were "communications from Smethurst to [Intuitive] and support application of the attorney-client privilege. They are also documents prepared by the attorney pursuant to the attorney-client relationship and engagement that the evidence supports includes Smethurst's impressions, conclusions, opinions and legal theories. They are therefore protected from disclosure pursuant to the attorney work product doctrine."

Having found the existence of an attorney-client privilege, the trial court then found that Intuitive did not waive that privilege through asserting the avoidable consequences defense. In so doing, the court acknowledged the inherent tension in Intuitive's assertion of the defense: Despite Intuitive's claim that it had drafted the defense narrowly—"limited to [Paknad's] failure to take advantage of established complaint procedures and other preventative activities provided by [Intuitive]"—the court noted that Intuitive expressly pleaded that it "exercised reasonable care to promptly prevent and correct any inappropriate conduct." The court therefore observed, "[T]he assertion of [Intuitive] may place the adequacy of the investigation into issue if, as here, [Paknad] was still employed at the time of the investigation and able to take advantage of any corrective measures the employer undertook as a result of the investigation."

8

Despite these observations, the trial court concluded that Intuitive's assertion of the avoidable consequences defense did not put the Smethurst investigations at issue. The court accepted that Intuitive "does not seek to rely on the investigation itself as a defense," inferring that Intuitive's "established anti-harassment, anti-discrimination and anti-retaliation policy, and complaint procedure referred to in the affirmative defense" existed "prior to and independent of the investigation."

The trial court also concluded that Intuitive did not waive the attorney-client privilege through disclosure and that Paknad had not established a substantial need for the reports and related investigative materials.

## II.    DISCUSSION

Paknad argues that the trial court erred by finding the existence of an attorney-client relationship between Smethurst and Intuitive. She next argues that even assuming such a relationship, Intuitive's answer and discovery responses have placed the Smethurst investigations at issue, such that disclosure of the investigative materials is required. Finally, Paknad argues that Intuitive's disclosure of the reports' contents to her constituted waiver.

We conclude that substantial evidence supports the trial court's finding of an attorney-client relationship between Smethurst and Intuitive, giving rise to the attorney-client privilege and work product protections. Intuitive, however, has waived the privilege as to the Smethurst reports and related investigative materials by placing the scope and adequacy of the investigations at issue, such that disclosure of the materials is necessary for a fair adjudication of the action.

### A.    *Standard of Review*

" 'The standard of review generally applicable to review of discovery orders is abuse of discretion, as management of discovery lies within the sound discretion of the trial court.' " (*Haniff v. Superior Court* (2017) 9 Cal.App.5th 191, 198.) " 'In particular,

9

the abuse of discretion standard of review ordinarily applies to review of an order on a motion to compel discovery.' " (*Ibid*.)

" '[W]hen the facts asserted in support of and in opposition to the motion [to compel] are in conflict, the trial court's factual findings will be upheld if they are supported by substantial evidence.' " (*City of Petaluma v. Superior Court* (2016) 248 Cal.App.4th 1023, 1031 (*City of Petaluma*).) But we apply "independent review to the trial court's conclusions as to the legal significance of the facts." (*Ibid*.)

**B.** ***Substantial Evidence Supports the Trial Court's Finding of an Attorney-Client Relationship***

To begin, we reject Paknad's claim that the trial court erred in finding an attorney-client relationship between Smethurst and Intuitive. "When a party asserts the attorney-client privilege it is incumbent upon that party to prove the preliminary fact that a privilege exists." (*State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 639.) On that party's prima facie showing "that a communication has been made 'in confidence in the course of the lawyer-client . . . relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential,' or that an exception exists." (*Ibid*.)

A defendant employer establishes "facts necessary to support a prima facie claim of privilege, i.e., communication in the course of the lawyer-client relationship" upon a showing that the attorney was "hired by [the] employer to conduct an investigation of the charges of discrimination." (*Wellpoint*, *supra*, 59 Cal.App.4th at p. 123.)

Substantial evidence supports the trial court's finding that Intuitive hired Smethurst to investigate Paknad's charges of discrimination. General counsel Kara A. Reiter's declaration made that clear. According to Reiter, upon learning of Paknad's initial complaint, she consulted Intuitive management and hired Smethurst to investigate Paknad's allegations and recommend further action to the company as needed. On

10

concluding the first investigation, Smethurst prepared a report containing "mental impressions and conclusions," which were shared with Intuitive's litigation counsel "to make recommendations to [Reiter] and [Intuitive] management." Upon learning of Paknad's second complaint, Intuitive again hired Smethurst to investigate. At the end of the second investigation, Smethurst prepared another report, which was "issued . . . to the Intuitive legal department" and "reviewed . . . with [litigation counsel] . . . to make recommendations to [Reiter] and [Intuitive] management regarding whether [Paknad's] allegations amounted to violations of law, violations of [Intuitive] policy, or needed to otherwise be addressed."[4]

Paknad's own evidence bolsters the trial court's finding in favor of an attorney-client privilege. Exhibit A to the Paknad declaration contains an e-mail from Employee Relations representative Nancy L. Hill in response to Paknad's first complaint, in which Hill wrote: "I am responsible for investigating employee and compliance complaints . . . . We take these issues seriously and have engaged Andrea Kelly Smethurst, an attorney and investigator, to look into these issues." Similarly, exhibit E contains an e-mail from Employee Relations representative Debbie D. Lauber in response to Paknad's second complaint: "[Intuitive] takes very seriously its obligation to ensure employees are protected from retaliation following the submission of a complaint and/or closure of an investigation. We have engaged Andrea Kelly Smethurst, an outside, independent investigator to conduct an investigation into your claims of retaliation." Independent of the Reiter declaration, these e-mails establish the preliminary facts sufficient to support a prima facie showing of privilege—specifically, that Smethurst "was an attorney hired by [Intuitive] to conduct an investigation of the charges of discrimination." (*Wellpoint*, *supra*, 59 Cal.App.4th at p. 123.)

---

[4] In concluding that substantial evidence supports the trial court's finding, we rely only on portions of the Reiter declaration the trial court found to be admissible.

11

Because Intuitive has established "the facts necessary to support a prima facie claim of privilege," the burden shifts to Paknad to show that " 'the claimed privilege does not apply or that an exception exists or that there has been an expressed or implied waiver.' " (*Wellpoint*, *supra*, 59 Cal.App.4th at pp. 123, 124.)  Paknad's contention that Smethurst "was not hired to perform legal work but as a neutral investigator" does not suffice.

The Court of Appeal rejected a similar argument in *Wellpoint*.  (*Wellpoint*, *supra*, 59 Cal.App.4th at p. 121.)  During discovery, plaintiff asked employer to produce a prelitigation investigative report outside counsel had prepared in connection with complaints plaintiff had made while employed at the company.  (*Id.* at pp. 117–118.)  Employer refused on privilege grounds, and plaintiff moved to compel.  (*Ibid.*)  The trial court granted the plaintiff's motion to compel disclosure of outside counsel's prelitigation investigative report, holding that the attorney-client privilege did not apply because in investigating plaintiff's complaints, outside counsel was acting not as an attorney, but "as the corporate investigator into plaintiff's complaints of discrimination."  (See *id*. at pp. 119, 118.)

The Court of Appeal reversed.  (*Wellpoint*, *supra*, 59 Cal.App.4th at p. 121.)  It acknowledged a prior line of cases holding that the attorney-client privilege did not apply when the " 'dominant purpose' " of the attorney-client relationship was not the provision of legal services, but cautioned that "[r]eliance on these cases to support a blanket rule excluding attorney investigations of employer discrimination from attorney-client and work product protection is misplaced."  (*Id.* at p. 122.)  The court concluded that the employer had presented "facts necessary to support a prima facie claim of privilege" because it was undisputed that outside counsel "was an attorney hired by [the] employer to conduct an investigation of the charges of discrimination."  (*Id*. at p. 123.)  This shifted the burden to plaintiff to show that " 'the claimed privilege does not apply or that an exception exists or that there has been an expressed or implied waiver.' " (*Id*. at p. 124.)

12

It was not enough to "simply assert[] . . . that [outside counsel] was engaged in a fact-finding mission. At a minimum, [plaintiff] needed to present evidence concerning his employer's normal method of dealing with internal employment discrimination complaints and whether they were routinely assigned to outside counsel." (*Ibid*.) Without such evidence, the plaintiff could not overcome the claim of privilege. (*Ibid*.)

So too, in *City of Petaluma*, the trial court found that, because the terms of retention limited outside counsel's role to that of a fact finder and did not extend to providing legal advice to City, the attorney-client privilege did not apply to a prelitigation report outside counsel prepared in response to the plaintiff's prior complaint to the United States Equal Employment Opportunity Commission. (*City of Petaluma*, *supra*, 248 Cal.App.4th at pp. 1030–1031, 1034.) In reversing, the Court of Appeal reasoned that because " '[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant[,]' . . . 'fact-finding which pertains to legal advice counts as "professional legal services" ' " giving rise to "attorney-client and attorney work product protections." (*Id*. at pp. 1034, 1036.) Outside counsel in *City of Petaluma* was "not merely a fact finder whose sole task was to gather information and transmit it to the City, as [plaintiff] suggests. Instead, she was expected to use her legal expertise to identify the pertinent facts, synthesize the evidence, and come to a conclusion as to what actually happened." (*Id*. at pp. 1034–1035.) The reviewing court thus concluded that the "dominant purpose of [outside counsel's] representation was to provide professional legal services to the City Attorney so that [the City Attorney], in turn, could advise the City on the appropriate course of action." (*Id*. at p. 1035.)

*Wellpoint* and *City of Petaluma* establish that to rebut a prima facie showing of privilege, it is not enough that the attorney was acting as an investigator or fact finder. Plaintiff must also show that the "dominant purpose" of the relationship between the attorney and employer was something other than the provision of legal services.

13

(*Wellpoint*, *supra*, 59 Cal.App.4th at p. 122; *City of Petaluma*, *supra*, 248 Cal.App.4th at p. 1035.) *Wellpoint* suggested that a plaintiff might make this showing by presenting evidence that the employer "routinely assigned" to outside counsel the task of investigating employee complaints, such that counsel's work was more akin to "routine fact-finding on behalf of the company's personnel department rather than legal work." (*Wellpoint*, at p. 124.) *City of Petaluma* suggested that such a showing could be possible if plaintiff presented evidence that the attorney's role was solely limited to gathering and transmitting information, without any use of legal expertise. (*City of Petaluma*, at pp. 1034–1035.)

Such is not the case here. The trial court found that "the dominant purpose of the representation of Smethurst was to provide legal services to [Intuitive] so that [Intuitive], with further consultation with outside employment counsel, could determine an appropriate course of action [as to Paknad's complaints]." Substantial evidence supports this finding. Intuitive hired Smethurst for her experience both as an "attorney and employment investigator." The scope of Smethurst's duties extended beyond gathering and transmitting information, and included conducting two "privileged investigation[s]," and "provid[ing] her recommendations to the [c]ompany for further [decisionmaking]." Smethurst provided her second investigative report directly "to the Intuitive legal department," and the findings and recommendations contained in that report were shared with Intuitive management and litigation counsel, "in order to make recommendations to . . . [Intuitive] management regarding whether [Paknad's] allegations amounted to violations of law, violations of [Intuitive] policy, or needed to otherwise be addressed." In its response to plaintiff's form interrogatory No. 12.6 relating to the reports, Intuitive represented that "[b]oth reports were the result of investigations conducted at the direction of counsel, for the purpose of analyzing potential legal risk and preparing for possible litigation, such as the pending litigation." This is the essence of what

14

"provid[ing] legal services" entails. (*City of Petaluma*, *supra*, 248 Cal.App.4th at p. 1035.)

Because Smethurst's investigative duties were inextricably linked to the provision of legal services and legal advice, we agree with the trial court that an attorney-client relationship exists between Smethurst and Intuitive, such that the attorney-client privilege and work product doctrine applied.

## C. *Intuitive Has Waived the Privilege by Placing the Smethurst Investigations at Issue*

Paknad next argues that even if the attorney-client privilege applied, Intuitive has waived it by putting the "adequacy of the investigation[s] directly at issue" through its assertion of the avoidable consequences defense. Specifically, Paknad argues that by asserting it had policies and procedures in place "to promptly prevent and correct any inappropriate conduct," and alleging Paknad "unreasonably failed to take advantage" of those policies and procedures, Intuitive has directly placed at issue questions relating to the investigations' scope and adequacy.

We agree, and conclude that Intuitive's assertion of the avoidable consequences defense, as well as its response to plaintiff's form interrogatory No. 15.1, have placed the Smethurst investigations directly at issue.

### 1. *Intuitive Has Placed the Smethurst Investigations at Issue*

A waiver of the attorney-client privilege occurs upon a showing that " 'the client has put the otherwise privileged communication directly at issue and that disclosure is essential for a fair adjudication of the action.' " (*Wellpoint*, *supra*, 59 Cal.App.4th at p. 128.) Thus, "[i]f a defendant employer hopes to prevail by showing that it investigated an employee's complaint and took action appropriate to the findings of the investigation, then it will have put the adequacy of the investigation directly at issue, and cannot stand on the attorney-client privilege or work product doctrine to preclude a thorough examination of its adequacy." (*Ibid.*)

15

Intuitive denies that its assertion of the avoidable consequences defense placed the Smethurst investigations at issue, volunteering two explanations of this defense not apparent from its answer. First, Intuitive maintains that this defense "was focused on [p]laintiff's failure to take advantage of [Intuitive's] complaint procedure with respect to many allegations she has made in the litigation but did not make while employed by Intuitive." Second, as to any allegations Intuitive would concede Paknad made while in its employ, Intuitive says its defense is "that it actually responded appropriately to them, *without regard to what is contained in its outside counsel's analyses*" and that it "does not seek to hide behind its outside counsel's analyses as a shield in the event a fact finder decides Intuitive's response was inadequate." (Boldface omitted.) We address each of these defense theories in turn.

As to Intuitive's first contention—that the avoidable consequences defense was focused only on claims Paknad did not raise while at Intuitive—Intuitive supplies no meaningful rubric by which to differentiate between what it characterizes as reported versus unreported claims.[5] While Intuitive contends it had "thoroughly investigated every allegation that [p]laintiff presented," contemporaneous notes from Paknad and the company suggest this is far from clear. For example, at the end of the first investigation in June 2018, Intuitive informed Paknad that the focus of the investigation was limited to Paknad's transition within the company, as Paknad had requested. Paknad disputed this characterization from the outset, asserting that her transition "was just one element" among "ongoing issues" such as "bullying, compliance concerns and disparate treatment." Paknad expressed similar dissatisfaction with the scope of the second investigation, repeatedly advising Intuitive that many of her claims were "not properly

---

[5] In its opposition to Paknad's motion to compel filed in the trial court, Intuitive noted that "some of [p]laintiff's discovery responses . . . include summaries of a number of allegations that were not raised by [p]laintiff while she was at Intuitive." However, Intuitive did not further specify which of the allegations Paknad failed to raise.

16

explored." Intuitive appeared to acknowledge this dispute in correspondence to Paknad dated December 28, 2018, in which general counsel Reiter wrote: "It appears that we disagree about the adequacy and findings of the first two investigations." Given this threshold dispute over whether Intuitive's failure to address Paknad's allegations arose out of Paknad's failure to report them, or Smethurst's failure to investigate them even though they were reported, we do not believe Intuitive's avoidable consequences defense can be meaningfully limited to Paknad's unreported claims. This is particularly so here, where the alleged misconduct began as early as 2014 and persisted until Paknad's termination in 2018. Such a continuous course of conduct cannot be readily parsed into discrete episodes.

Intuitive's second argument—that as to the claims Paknad did raise, Intuitive will not rely on the Smethurst reports but only on the propriety of its response independent of counsel's findings—presumes against logic and the record that its response can be said to have been independent of the very investigation it commissioned to inform that response. As Reiter declared, Intuitive engaged Smethurst "to make recommendations to . . . [Intuitive] management" about how to respond. Intuitive cannot at once claim attorney-client privilege and disavow any interrelationship between the investigative findings it commissioned and the response it ultimately chose. If Intuitive chose to disregard the findings of the investigations it commissioned, those findings would be relevant to the claimed adequacy of its response; likewise, if it chose to accept and act on the findings made, the adequacy of its response is enmeshed with the adequacy of those investigations.

As the trial court noted in denying the motion to compel, "[i]t is unclear what [Intuitive] refers to as reasonable care to prevent and correct inappropriate conduct, other than perhaps the written warning issued" due to the investigations. And while the trial court ultimately surmised that Intuitive must have other "anti-harassment, anti-discrimination and anti-retaliation policy, and complaint procedure . . . in place prior

17

to and independent of the investigation," we do not defer to speculation unsupported by any evidence, substantial or otherwise. To the contrary, the record makes clear that the Smethurst investigations represent Intuitive's first and only response to Paknad's harassment, discrimination, and retaliation claims. This is evidenced by the following: (1) Intuitive immediately referred both Paknad's complaints to Smethurst for investigation with no intervening process in between, (2) Intuitive relied on the Smethurst reports to reach its purportedly independent findings, and (3) to the extent Intuitive took corrective actions in response to Paknad's complaints, it did so in the immediate aftermath of, and as a direct result of, the Smethurst investigations.

Despite disavowing use of the reports in the trial court, Intuitive responded to plaintiff's form interrogatory No. 15.1 (requiring it to set forth the bases for its affirmative defenses) by relying on the Smethurst investigations and touting their thoroughness and independence: "Defendant . . . thoroughly investigated every allegation that [p]laintiff presented by hiring an independent, outside investigator to conduct two investigations, interview numerous witnesses (some of which she interviewed several times), and review a large volume of documentary evidence . . . ." In *Wellpoint*, the court held that a defendant may waive the privilege through discovery responses "indicat[ing] the possibility of a defense based on thorough investigation and appropriate corrective response." (*Wellpoint*, *supra*, 59 Cal.App.4th at p. 129.) Because Intuitive's response to plaintiff's form interrogatory No. 15.1 confirms the likelihood of such a defense, we conclude that Intuitive has placed the Smethurst investigations at issue.

The vigor of Intuitive's commitment to abstain from express reliance on the content of the investigative reports is clear; it is also clear that Intuitive is as committed to relying on the fact of the investigations—and by implication their adequacy— as evidence that its response was diligent and its corrective action reasonable. And if Intuitive may introduce evidence that it "thoroughly investigated every allegation that

18

[p]laintiff presented," then fairness dictates that Paknad be given access to the reports and investigative materials as well, so that she has equal opportunity to test those claims of thoroughness. (*Jones*, *supra*, 12 Cal.5th at p. 363 ["[A]llowing one party to rely on a document to establish key facts while simultaneously shielding that same document from the other side works an unfair adversarial advantage"].) This is particularly important in a case like this, where the alleged misconduct is extensive and continuous, and contemporaneous evidence demonstrates that the scope and adequacy of the investigations have been a central point of contention between the parties since before litigation commenced.

Accordingly, we conclude that Intuitive has waived the attorney-client privilege as to the Smethurst investigations by placing the investigations directly at issue.[6]

### 2. *Extent of Waiver*

Having concluded that Intuitive waived the attorney-client privilege by placing the Smethurst investigations at issue, we next address the extent of that waiver. Intuitive's privilege logs set forth three categories of items relating to the investigations: (1) the Smethurst reports themselves, (2) Smethurst's notes from interviews with employees conducted in connection with the investigations, and (3) correspondence between Smethurst and Intuitive management regarding the investigations. We do not see a meaningful basis to distinguish between these categories of materials, when each can be expected to contain factual information Smethurst collected during the investigative process. Indeed, facts gathered during interviews with employees or in discussions with management may be just as imperative as the reports themselves in informing the scope and adequacy of the investigations. For example, if contemporaneous notes from Smethurst's interviews of Paknad show that Paknad reported instances of

---

[6] Because we conclude that Intuitive has placed the Smethurst investigations at issue, we do not consider Paknad's alternative argument that the company has also waived the privilege through disclosure, pursuant to section 912 of the Evidence Code.

discrimination/harassment that Smethurst did not investigate or include in the final reports, that omission would undermine Intuitive's argument that Paknad unreasonably failed to avail herself of Intuitive's policies and procedures to prevent discrimination/harassment. By contrast, if those same notes revealed that Smethurst thoroughly investigated and reported each of the allegations Paknad brought to her attention during the investigative process, then Paknad's claim that many of her claims were "not properly explored" would lose much of its force.

To be sure, in ordering disclosure of the reports and related investigative materials, we are mindful that "[t]he work product rule in California creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions or legal theories." (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1250; see also Code Civ. Proc., § 2018.030, subd. (a) ["A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances"].) In its privilege logs, Intuitive describes the Smethurst reports as "[i]nvestigation report[s] prepared by outside counsel summarizing outside counsel's findings, mental impressions, and conclusions regarding [p]laintiff's allegations of discrimination and retaliation." Based on this description, at least some aspect of the reports may be absolutely privileged under section 2018.030(a). In addition, Smethurst's interview notes and communications with Intuitive management are also likely to contain absolutely privileged work product material. Therefore, upon an adequate preliminary showing that disclosure of the reports or investigative materials would reveal Smethurst's "impressions, conclusions, opinions, or legal research or theories" (§ 2018.030(a)), the trial court may determine, " 'by making an in camera inspection if necessary, whether absolute work product protection applies to some or all of the material.' " (*Jones*, *supra*, 12 Cal.5th at p. 366.) While an in-camera review would not be appropriate to determine the threshold question of whether a privilege

20

existed, our conclusion that the privilege has been waived still allows the trial court to conduct an in camera review "to determine if some protection is warranted notwithstanding the waiver." (See *Costco*, *supra*, 47 Cal.4th at p. 740.)

## III.   DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate the November 28, 2022 order denying Paknad's motion to compel insofar as it relates to the Smethurst reports and related investigative materials, and to enter a new order granting the motion. Prior to disclosing the reports and investigative materials, and upon a preliminary showing under Code of Civil Procedure section 2018.030, subdivision (a), the trial court may conduct an in camera review of the materials to determine "if some protection is warranted notwithstanding the waiver [of the attorney-client privilege]." (See *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 740*; People v. Superior Court (Jones)* (2021) 12 Cal.5th 348, 366.) Upon completion of the review, the trial court shall disclose to Paknad any portions of the Smethurst investigations it deems to not be protected under the attorney work product rule, or another applicable privilege.

Upon issuance of the remittitur, the temporary stay order is vacated.

_____
LIE, J.

WE CONCUR:

_____
GREENWOOD, P. J.

_____
WILSON, J.

*Paknad v. Superior Court*
H050711